Verna **WALTERS**, Plaintiff-Appellant,

v.

**CHICAGO AND NORTH WESTERN RAILWAY COMPANY**, Defendant-Appellee.

No. 11212.

United States Court of Appeals, Seventh Circuit.

Oct. 29, 1954.

William R. Gold, Milwaukee, Wis., for appellant.

Lowell Hastings, Chicago, Ill., Norman C. Skogstad, Milwaukee, Wis., for appellee.

Before DUFFY, Chief Judge, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

Pursuant to Rule 13 of the Rules of this Court the plaintiff-appellant, Verna Walters, filed a motion asking that oral argument limited to the question of the jurisdiction of the District Court be held in advance of a hearing on the merits. Her motion was granted.

This appeal presents the question of whether or not the District Court had jurisdiction to pass on a question of the interpretation of a collective bargaining agreement between a railroad and one of the brotherhoods when the validity of the contract was not in question. We think that under the facts presented here it was necessary for the plaintiff to first file the claim with the National Railroad Adjustment Board.

This action was filed by Verna Walters in the United States District Court for the Eastern District of Wisconsin. The complaint alleged diversity of citizenship and that the matter in controversy exceeded the required jurisdictional amount. The complaint further alleged that the plaintiff for many years was employed by the defendant railroad, the Chicago and North Western Railway Company, hereinafter referred to as the "railroad," in its Wisconsin Law Department in the City of Milwaukee, Wisconsin, as a stenographer-typist and in other clerical capacities; that the railroad on August 30, 1947, had a collective bargaining agreement with the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, hereinafter referred to as the "Clerks"; and that the plaintiff was working for the defendant under the terms and conditions of this contract. The complaint alleged further that the plaintiff was discharged as of August 30, 1947, in violation of said contract and that as a result of that breach of the contract by the railroad the plaintiff "has suffered a substantial wage loss and wage deduction, has been denied the privileges incident to seniority acquired during the course of her employment, * * * has been deprived of vacation rights * * * has been denied the use of a system pass, and has suffered diminished pension rights * * * all to her damage in the sum of Six Thousand Dollars ($6,000.00)." Plaintiff, therefore, demanded judgment for $6,000.00 damages and a decree reinstating her to her former position with her seniority, pension, vacation and pass rights unimpaired.

The principal defense asserted by the defendant's answer was the denial that the plaintiff was covered by the scope rule of the defendant's contract with the Clerks.

The District Court conducted a hearing both on the question of the interpretation of the contract and on the question of the jurisdiction of the District Court. In this hearing the parties stipulated that the contract between the Clerks and the railroad, which was filed as an exhibit to the complaint, was in full force and effect at the time the plaintiff was discharged, and that if the plaintiff came within the scope of the agreement her discharge constituted a breach of the agreement.

Included in the District Court's findings of fact were the findings that the contract was in full force and effect at the time the plaintiff was discharged; that plaintiff was never a member of the Clerks' organization; that this contract expressly excluded from its coverage the "Immediate office force of the following general officers: * * * Law Department"; that in 1936 the scope rule of the contract was changed by substituting therein the words "General Solicitor" for

the words "Law Department"; that this substitution of terms did not result in a claim by the Clerks that any additional employees were included under the contract; and that the substitution of the words "General Solicitor" for the words "Law Department" was not intended to expand the coverage of the bargaining agreement. The court further found that during the period from June 1947 to October 1950 the Clerks and the railroad had been negotiating as to the bringing within the scope rule of the Clerks' agreement those persons, including plaintiff, who worked in the Law Department.

The court concluded that the plaintiff's position "was excluded" by the Clerks' contract and, second, that the matter was "not properly before this court, and should have been brought before the National Railroad Adjustment Board * * because it involves a grievance and dispute arising under a bargaining agreement." The District Court therefore dismissed the complaint.

The plaintiff-appellant insists that under the facts here it was not necessary for her to first exhaust her administrative remedies by filing her claim for relief with the National Railroad Adjustment Board before filing this action in the District Court. Appellant first cites Moore v. Illinois Central Railroad Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, as supporting this contention. In that case the Supreme Court said that the Railway Labor Act did not require an employee discharged in violation of the agreement which covered his employment to seek an adjustment of his controversy before the National Railroad Adjustment Board before filing an action for damages for wrongful discharge in the District Court.

But in the later case of Order of Railway Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318, the Supreme Court said that federal courts should not interpret such agreements prior to interpretation by the Adjustment Board. In that case there was a jurisdictional dispute between two brotherhoods involving the interpretation of their collective bargaining agreements and the matter was taken by one of the brotherhoods to a District Court for an interpretation of the bargaining agreements. The Court there pointed out, 326 U.S. at page 567, 66 S.Ct. at page 325, that Congress had created the National Railroad Adjustment Board, "an agency especially competent and specifically designated to deal with" the intricate and technical questions involved in the interpretation of agreements between the railroads and the brotherhoods. The Supreme Court there held that courts should give the Adjustment Board the first opportunity for the interpretation of the contract.

■ Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795, also involved a jurisdictional dispute between two brotherhoods. There the dispute involved the interpretation of the collective bargaining agreements of the Clerks and the Telegraphers. In attempting to get a binding interpretation of the two agreements the railroad filed an action for declaratory judgment in a New York state court naming both unions as defendants and sought an interpretation of both agreements and asked for a declaration that the Clerks' agreement covered the work in question. The trial court interpreted the contract in favor of the Clerks. The Court of Appeals of New York affirmed on the theory that the Moore case authorized courts to interpret such carrier-union collective agreements before the question had been submitted to the Adjustment Board. Two of the judges of the New York Court of Appeals dissented, relying on Order of Railway Conductors v. Pitney, supra, as saying that neither the federal nor the state courts should undertake to interpret such collective agreements until after their interpretation by the Adjustment Board. The Supreme Court in its opinion said, 339 U.S. at page 242, 70 S.Ct. at page 578, that in the Pitney case it "held that federal courts should not interpret such agreements prior to interpretation by the Adjustment Board." In the Slocum case the Supreme Court also said, 339 U.S. at

page 244, 70 S.Ct. at page 580: "We hold that the jurisdiction of the Board to adjust grievances and disputes of the type here involved [depending on interpretation of collective bargaining agreements] is exclusive." The Court there distinguished the Moore case by pointing out, 339 U.S. at page 244, 70 S.Ct. at page 580, that in that case Moore "could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract."

█ In the instant case the plaintiff's complaint clearly shows that she did not accept her discharge as final and merely file an action at law for damages and breach of contract. Instead in the caption of her complaint she stated, "Equitable Relief Sought," and in addition to damages she sought reinstatement "to her former position with her seniority, pension, vacation and pass rights unimpaired * * *." This complaint brought the plaintiff clearly within the Slocum case rather than within the facts of the Moore case.

In Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283, the Brotherhood of Railroad Trainmen had induced the carrier to agree to a collective bargaining contract which would call for the discharge of all Negro train porters. The court there explained, 343 U.S. at page 774, 72 S.Ct. at page 1025, that that dispute could not be resolved by an interpretation of the contract "so as to give jurisdiction to the Adjustment Board under our holding in" the Slocum case. Instead the complaint attacked the validity of the contract and was, therefore, properly filed in the District Court.

Our attention is called to the fact that Section 3 First (i) of the Railway Labor Act, 45 U.S.C.A. § 153 First (i), provides that after the parties have failed to reach an agreement between themselves "the disputes *may* be referred by petition of the parties or *by either party* to the ap-

propriate division of the Adjustment Board" (our emphasis), and that if the intent had been to make submission to the Board compulsory the word "shall" would have been used. We think this contention is met in another case decided by the Supreme Court the same day the Slocum case was decided. In this second case, Order of Railway Conductors of America v. Southern Railway Co., 339 U.S. 255, 256–257, 70 S.Ct. 585, 586, 94 L.Ed. 811, the Court said: "And if a carrier or a union could choose a court instead of the Board, the other party would be deprived of the privilege conferred by § 3 First (i) of the Railway Labor Act, 48 Stat. 1191, 45 U.S.C. § 153 First (i), 45 U.S.C.A. § 153, First (i), which provides that after negotiations have failed 'either party' may refer the dispute to the appropriate division of the Adjustment Board."

The plaintiff finally insists that in Transcontinental & Western Air v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325, the Supreme Court modified the rule on this question by saying that an employee working under the Railway Labor Act may file an action for a wrongful discharge in a District Court if the state law in the state where the action is filed permits such a filing in court without the employee's having exhausted his administrative remedies, and the plaintiff points out that in Keel v. Illinois Terminal R. Co., 346 Ill.App. 169, 104 N.E.2d 659, such action has been approved by the Illinois Appellate Court.

█ However, in the Koppal case the Supreme Court still said, 345 U.S. at page 661, 73 S.Ct. at page 910: "The result is that, whereas, under the Railway Labor Act, the Adjustment Board has exclusive jurisdiction to adjust grievances and jurisdictional disputes of the type involved in the Slocum case, that Board does not have like exclusive jurisdiction over the claim of an employee that he has been unlawfully discharged. Such employee may proceed either in accordance with the administrative procedures prescribed in his employment contract or he may resort to his action

at law for alleged unlawful discharge if the state courts recognize such a claim. Where the applicable law permits his recovery of damages without showing his prior exhaustion of his administrative remedies, he may so recover, as he did in the Moore litigation, supra, under Mississippi law." Clearly the Court there simply considered Koppal as coming factually within the Moore case.

We do not think that the Koppal case would permit the original filing in a District Court of a claim such as the claim presented in the plaintiff's complaint in the instant case where the employee does not accept her discharge as final and is still seeking in her complaint an interpretation of the agreement between one of the brotherhoods and the railroad as to her rights, if any.

The appellant claims in her brief before this court that she no longer seeks any relief other than damages for unlawful discharge, and that, therefore, the District Court has jurisdiction under the doctrine of the Moore case, supra. She has not amended her complaint nor made any record in the trial court of a change in the theory of her action. In reviewing the decision of the District Court we can look at only what was before it. Thomson v. Gaskill, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951; Drake v. General Finance Corp. of Louisiana, 5 Cir., 119 F.2d 588, 589. It has been specifically held that statements of fact in a brief that are not supported by the record may not be considered on appeal. Chesapeake & Ohio Ry. Co. v. Greenup County, Kentucky, 6 Cir., 175 F.2d 169, 171; Bono v. United States, 2 Cir., 113 F.2d 724, 725. The plaintiff cannot bring herself within the theory of the Moore case, supra, by a mere statement in her brief on appeal unaccompanied by a proper record below. As far as the record is concerned she is still claiming reinstatement, seniority, pension and vacation rights, etc.; all claims which require interpretation of the collective bargaining agreement by the Board.

The District Court was in error in trying and deciding this case on the merits. The District Court is therefore directed to expunge the judgment which it entered in this case on the merits and is directed to dismiss the complaint for lack of jurisdiction.