Helen Smith NELSON, Executrix of Arthur E. Nelson, Deceased, Appellant,

v.

SWING-A-WAY MANUFACTURING COMPANY, a Corporation, and Idus L. Rhodes, Appellee.

No. 16044.

United States Court of Appeals Eighth Circuit.

May 5, 1959.

Rehearing Denied June 25, 1959.

Harry M. James and Joseph Nessenfeld, St. Louis, Mo. (John H. Cassidy, Jr., and Wilbur C. Schwartz, St. Louis, Mo., were with them on the brief), for appellant.

Estill E. Ezell, St. Louis, Mo. (Lawrence C. Kingsland, Edmund C. Rogers, and Kingsland, Rogers & Ezell, St. Louis, Mo., were with him on the brief), for appellee.

Before SANBORN, JOHNSEN, and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Plaintiff appeals from judgment dismissing her patent infringement suit against defendant. The court granted a separate trial on the issue of the ownership of the patents and, after hearing on the merits upon such issue, found that defendant was the owner of the patents and dismissed the infringement suit.

Plaintiff is the executrix of the estate of her deceased husband, Arthur E. Nelson, and in such capacity has succeeded to all of Mr. Nelson's interest in the patents in controversy. Defendant Rhodes during the period here material had operated his manufacturing business as an individual, as a partnership jointly with his wife, as the Steel Products Manufacturing Co., and finally as Swing-A-Way Manufacturing Company, a Missouri corporation, hereinafter referred to as Swing-A-Way or defendant. Any rights acquired in the patents in controversy by Swing-A-Way and its predecessors are now owned by Swing-A-Way.

Nelson was continuously employed by defendant and its predecessors on a full time basis from 1940 to the time of the termination of his employment on February 16, 1950. Nelson was a mechanical engineer with the capacity to invent devices useful to his employer. By 1946 he had become president and general manager. During the period of Nelson's employment by defendant he invented a number of devices, secured patents upon some of them, and had applications pending upon other devices upon which patents were subsequently issued. This infringement action is based upon the alleged improper use of the Nelson patents by Swing-A-Way subsequent to the February 16, 1950, Agreement and Release.

Defendant's claims to the patents are based upon an agreement between Nelson and defendant dated May 1, 1946, and a later agreement dated June 30, 1949, which by its terms supersedes the 1946 agreement. Both of said agreements are in writing and are rather comprehensive. They provide for long-term employment for Nelson, grant him a percentage of the profits, and provide for payment for a period of years to Nelson or his successor in interest in case of disability or death. Nelson binds himself to devote his full time to the defendant, agrees that all patents previously issued to him shall be the property of the defendant and that all patents that he subsequently obtains shall belong to the defendant. The agreement provides in part that Nelson "does hereby assign, convey and transfer all of his right, title and interest in any present or future patents issued to him, or any one for him, to Corporation and agrees to execute any further written instruments necessary to effectuate such transfer."

Plaintiff concedes that if the 1946–1949 agreements had remained in force title to all patents issued to Nelson would be in the defendant. Plaintiff claims that defendant lost its rights in the patents and patent applications by virtue of an Agreement and Release entered into between Nelson and the defendant, dated February 16, 1950, which reads in part:

"Whereas, it is the mutual desire of both parties hereto that all duties, responsibilities, rights, and obligations of each of the parties hereto under said contract be cancelled and the said contract annulled and completely set at naught,

"Now, Therefore, the parties hereto hereby mutually agree as follows:

"1. [Nelson releases Swing-A-Way of all past and future obligations to him.]

"2. Swing-A-Way hereby agrees to release and discharge Nelson from

any and all claims or demands which it has, may have, or ever will have against Nelson in connection with any matter or thing arising out of said employment contract, or arising out of the performance by Nelson of any duties thereunder, or in connection with any matter or thing, done, or performed by Nelson either as Director, President, Manager, Agent, or Employee of Swing-A-Way.

"3. And By These Presents, the parties hereto hereby mutually release each other of and from any claims and demands of any nature whatsoever, which either of the parties hereto now have, ever had, or ever will have against the other party hereto from the beginning of the world down to the date of these presents."

Plaintiff further urges that the defendant is estopped to deny the plaintiff's title to the patent rights by reason of a final judgment entered in the Circuit Court of the City of St. Louis, Missouri, in Case No. 36,142, entitled Helen Smith Nelson, Executrix of Arthur E. Nelson, deceased v. Swing-A-Way Manufacturing Company, which action plaintiff contends adjudicated that Swing-A-Way was not the owner of the inventions patented by Nelson.

Upon this appeal plaintiff urges that the trial court erred in failing to hold that defendant was estopped by the state court judgment from asserting title to the Nelson patents, and makes the further contention that the court erred in failing to hold that the defendant was divested of all interest in the Nelson patents by the 1950 Agreement and Release, heretofore set out. We shall first consider the collateral estoppel issue.

The trial court in its conclusions of law states in part:

"7. The parties having confronted each other in the State Court suit, it is necessary to determine the effect of the adjudication. Since that suit was upon an action to set aside a release and to determine the rights of the parties with respect to such release, whereas the present case is an action for infringement of patents, the two suits are upon different causes of action.

"8. Where two successive suits are upon different causes of action, the effect of the judgment in the former suit upon the later one is through the operation of the doctrine of collateral estoppel. Although the parties may not relitigate issues that were adjudicated in the former suit, the estoppel by the former judgment goes only to such matters as were surely adjudicated in the former suit as necessary to the judgment therein. Matters not decided as essential to the former judgment are not foreclosed from adjudication in the later suit."

We are in complete agreement with the statements contained in item 7 of the trial court's conclusions, and agree with the statement of the trial court in item 8 that a collateral estoppel situation is here presented.

The trial court's conclusion as to the scope of collateral estoppel is in accord with established law. In Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597–598, 68 S.Ct. 715, 719, 92 L.Ed. 898, the Supreme Court states:

"But where the second action between the same parties is upon a different cause or demand, the principle of res judicata is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' Cromwell v. County of Sac, supra, 94 U.S. 351, 353, 24 L.Ed. 195.  *  *  *"

In United States v. Munsingwear, Inc., 340 U.S. 36, 38, 71 S.Ct. 104, 95 L.Ed. 36, the Court reaffirms and quotes the rule of res judicata stated in Southern Pacific R. Co. v. United States, 168 U.S.

1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355, as follows:

"The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified."

The legal principles heretofore stated are followed by the Missouri courts. Bushman v. Barlow, 321 Mo. 1052, 15 S.W.2d 329, 332; Dalton v. Dabbas, Mo., 276 S.W.2d 150, 152; Norwood v. Norwood, 353 Mo. 548, 183 S.W.2d 118, 122. See also 30 Am.Jur. Judgments, § 178, quoted and approved in the Norwood case, supra.

■■ In determining the effect of a former judgment pleaded as an estoppel, when the former judgment was not entered upon the same cause of action, the question is whether an issue litigated in the earlier suit is determinative of some matter in controversy in the later suit. To answer this question, "we must look to the pleadings making the issues, and examine the record to determine the questions essential to the decision of the former controversy." United Shoe Machinery Corporation v. United States, 258 U.S. 451, 459, 42 S.Ct. 363, 366, 66 L.Ed. 708. The doctrine of collateral estoppel applies to matters necessarily decided in the former judgment even if there is no specific finding or reference thereto. Yates v. United States, 354 U.S. 298, 336, 77 S.Ct. 1064, 1 L.Ed.2d 1356; Dalton v. Dabbas, supra; Dyas v. Dyas, Mo.App., 165 S.W.2d 317, 322; 30 Am.Jur. Judgment, § 183.

The legal principles heretofore stated are well established and are not disputed by the parties. The controversy arises in connection with the application of the law to the facts of this case.

The trial court in its final conclusion of law states:

"9. The most that could be said about the issues decided in the State Court suit with respect to title is that it was adjudicated there the Plaintiff therein had no obligation continuing after the 1950 Release with respect to the patents to execute any further papers concerning the same (namely, the documents recordable in the Patent Office). The refusal to make any Declaratory Judgment specifically defining status of title to the patents was not an adjudication on the merits of that issue, one way or the other, nor was adjudication of that issue necessary to the judgment that the State Court made and entered."

This mixed conclusion of law and fact is not supported by the legal principles heretofore stated, and is not supported by substantial evidence.

The record in this case consists of the pleadings in the present suit, the pleadings and the court's memorandum and judgment in the state court suit, abstract of title to the various patents, and the written contracts entered into between the parties. No oral testimony was offered. No question of credibility of witnesses is involved.

We shall now turn our attention to the pleadings in the state court suit. That action involved many issues, all of which are immaterial here except the issues presented by Count III of Swing-A-Way's counterclaim. The state court action was brought by Nelson to set aside the February 16, 1950, Agreement and Release, and to reestablish his rights under the 1946 and 1949 contracts. Upon Nelson's death his executrix was substituted as plaintiff. Swing-A-Way there contended that the Agreement and Release was valid, and made a further contention that in any event it had a right to terminate Nelson's employment because of breaches in the employment contract, among them, Nelson's failure

to assign the patents. This later issue is responsible for some statements in the plaintiff's pleading to the effect that plaintiff has not refused to assign the patent rights and that she is willing to do so if Swing-A-Way performs its contractual obligations to her. Swing-A-Way, in the crucial Count III of its counterclaim, alleges that Nelson while acting as its employee obtained patents and made applications for patents upon useful inventions, described in detail and by patent and patent application number (which are the identical patents involved in the present case); that by virtue of the June 30, 1949, employment contract it acquired full and complete ownership of all of said patents and patents applied for; that Nelson's executrix wrongfully claims to be the owner of such patent rights and that Swing-A-Way is not the owner of such rights; and that an actual controversy exists between the parties over the ownership of the Nelson patents and patent applications. The prayer is as follows:

"Wherefore, defendant Swing-A-Way Manufacturing Company prays this Court to enter its decree under Count III of this Counterclaim declaring and adjudging the respective rights and relations existing between this defendant and plaintiff, Helen Smith Nelson, as personal representative of Arthur E. Nelson, deceased, in regard to said patents and patent applications, that defendant Swing-A-Way Manufacturing Company is the lawful owner of said patents and patent applications, and for such other and further relief as to the Court may seem just and proper in the premises."

Plaintiff's pleading, while somewhat confusing because of the complicated issues involved in the action as a whole, does definitely deny Swing-A-Way's claim of ownership in the patent rights, among other things, stating:

"(4) In answer to Paragraph 4, plaintiff denies that defendant is entitled to be the lawful owner of all patents held in the name of Arthur E. Nelson because the defendant has not lived up to the terms of the contract providing for such assignment and, for further answer, plaintiff states that she stands ready and willing to make an assignment of all such patents when the defendant agrees to abide by its obligations under this same contract." .

The prayer is that the court order judgment in favor of the plaintiff and against the defendant on Count III.

It appears clear to us that the only issue raised in the pleadings with reference to Count III of the counterclaim was the issue of whether the plaintiff or the defendant was the owner of the Nelson patent rights which are the same patent rights involved in the present action. The state court entered judgment in favor of the plaintiff on defendant's counterclaim. The court in a memorandum in explanation of the judgment entered states:

"In the contracts of May 1, 1946, and June 30, 1949, entered into between the parties, and which were offered in evidence, the rights of the respective parties in the patents were specifically provided for but the agreement and release of February 16, 1950, which agreement and release it is admitted was prepared by counsel representing the defendant, totally failed in any respect to make any reservation or reference to the rights of the respective parties in the patents as was done in the contracts theretofore entered into between Nelson and defendant, as aforesaid.

"In the agreement and release of February 16, 1950, it is provided as follows:

" 'Swing-A-Way hereby agrees to release and discharge Nelson from any and all claims and demands which it has, may have, or ever will have against Nelson in connection with any matter or thing arising out of said employment contract or arising out of the performance by Nelson of any duties thereunder or in

connection with any matter or thing done or performed by Nelson.'

"Due to the failure of defendant in its agreement and release of February 16, 1950, to retain its rights to the patents as acquired in the contract of June 30, 1949, and which latter contract in its entirety was cancelled by the agreement and release of February 16, 1950, and also due to the broad provisions of the release affecting the rights of the respective parties as set out in said agreement and release of February 16, 1950, the relief for specific performance sought by defendant in the third count of its counterclaim is denied."

We think it is entirely clear from the foregoing judgment and memorandum that the state court held adversely to Swing-A-Way on its contention that it was the owner of the Nelson patents, and that the dismissal of Swing-A-Way's counterclaim was based on such determination.

We find no support for the theory of the defendant and the trial court that the state court denied specific performance solely on the basis that the 1950 Agreement and Release excuses Nelson from the affirmative act of executing an assignment of the patents. Swing-A-Way in its prayer made no definite request for specific performance, but prayed that it be declared the lawful owner of the patents. Plaintiff in her answer to the counterclaim denied defendant's ownership, but did not plead that she was not bound to execute any further papers in the event the court found Swing-A-Way had title to the patents.

■ Our interpretation of the state court's memorandum and order is that the court fully considered the issue of the ownership of the patents, and that Swing-A-Way was denied relief because the court determined that it was not the owner of such patents. This was Swing-A-Way's interpretation of the state court's judgment in its motion for a new trial. Among the grounds urged for a new trial were the following:

"7. The Court erred in adjudging under Count III of the defendant's counterclaim that the defendant Swing-A-Way Manufacturing Company is not the lawful owner of the patents and patent applications referred to in said Count."

"13. The Court erred in deciding that the release of February 16, 1950, extinguished, limited or in any wise affected any right, title or interest theretofore vested of this defendant in and to said patents and applications."

Other grounds of the motion give further support to this view. The motion for a new trial was overruled. No appeal has been taken from the state court judgment and said judgment is binding on all parties thereto.

We are convinced that the record of the state court suit conclusively shows that the issue of Swing-A-Way's ownership of the Nelson patents was squarely raised by the pleadings, that the state court's memorandum and judgment indicate that the court intended to and did adjudicate such issue adversely to Swing-A-Way, and that the dismissal of the counterclaim was necessarily based upon the determination that Swing-A-Way did not own the patents. It follows that under the doctrine of collateral estoppel Swing-A-Way is barred from establishing ownership to the patents in the present suit.

Our holding on the collateral estoppel issue precludes any consideration of the issue relating to the interpretation and effect of the various agreements on the ownership of the Nelson patents. We are bound by the determination of the state court to the effect that Swing-A-Way did not own the patents, regardless of whether the state court's interpretation of the contracts which existed between the parties is right or wrong.

The abstract of patents in evidence shows title to the patents to be in the plaintiff. Defendant is estopped by the state court judgment from asserting any interest in the patents. We find no legal or factual basis for the trial court's de-

**190**

termination that the defendant owned the patents. The court erred in dismissing the complaint.

In deciding this case we have, of course, not taken into consideration matters included in the defendant's brief which were not before the trial court and are no part of the record on appeal. See Schley v. Pullman's Palace Car Co., 120 U.S. 575, 578, 7 S.Ct. 730, 30 L.Ed. 789. Walters v. Chicago and North Western Railway Co., 7 Cir., 216 F.2d 332, 336.

Reversed and remanded.