Ivan BATTLE, Appellant,

v.

BROTHERHOOD OF RAILWAY & STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS & STATION EMPLOYEES, J. R. White Lodge 1568, et al., Appellees.

No. 17212.

United States Court of Appeals District of Columbia Circuit.

Argued March 1, 1963.

Decided June 13, 1963.

Petition for Rehearing En Banc Denied En Banc Aug. 1, 1963.

Mr. Winfred R. Mundle, Washington, D. C., with whom Mr. John A. Shorter, Jr., Washington, D. C., was on the brief, for appellant.

Mr. Milton Kramer, Washington, D. C., for appellee, Brotherhood of Railway & Steamship Clerks, Freight Handlers, Express & Station Employees, and certain other appellees.

Messrs. William A. Glasgow and Thomas A. Flannery, Washington, D. C., were on the brief for appellee, Washington Terminal Co. Mr. Roman J. Gerber, Washington, D. C., also entered an appearance for appellee, Washington Terminal Co.

Before WILBUR K. MILLER, BURGER and WRIGHT, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Ivan Battle was employed by the Washington Terminal Company as a janitor in its maintenance of equipment department when, in 1952, the Brotherhood of Railway and Steamship Clerks became the bargaining agent for all employees in Battle's classification and entered into a union shop agreement with Washington Terminal. By its terms, all employees covered thereby were required to acquire and maintain union membership as a condition of continued employment. Battle joined the union.

Although, apparently, he had paid dues punctually for more than nine years, the union suspended him on June 30, 1961, because he was then two months in arrears in the payment of dues—a total of $8.00.[1]

1. Article 6 of the union's statutes provides as follows:
"Section 1. Dues are due and payable on the first day of each calendar month, which means that a member owes two months dues on the first day of the second month. It is the responsibility of every member to know when dues are payable and pay them to an authorized representative of his Lodge within the time limits specified in this article. No demand for payment of such dues or notice of non-payment thereof or of delinquency is necessary or required. A member who fails to pay his dues within the time limits specified in this article is automatically suspended at 12 o'clock midnight of the last day of the second month for which he owes dues and no notice of suspension is required. The Sec-

Battle alleges that on July 25, 1961, he tendered to the secretary of the union all arrearages in dues and applied for reinstatement.[2] The secretary refused to accept the money. Two days later, on July 27, 1961, the union served a "citation" on Washington Terminal, advising it that Battle had "failed to maintain membership in this Brotherhood by failing to tender or pay dues as required by the Constitution and Laws of the Brotherhood." This was in effect a demand that Battle be discharged, because the contract provided that the union might "cite" to the employer any employee suspended by it and that the employer must discharge the cited employee if he had been properly suspended under union regulations.

Pursuant to subsections (a) and (b) of Section 5 of the union shop agreement, Washington Terminal then advised Battle of his right to a hearing on the union's representations. This hearing was held before the master mechanic of the company on August 3, 1961, who decided on August 7 that Battle had not complied with the union shop agreement by maintaining union membership. On appeal to the manager of Washington Terminal, the master mechanic's finding was approved. At Battle's request, a neutral arbitrator was appointed under Section 5(c) of the agreement, who conducted an evidentiary hearing and received briefs. At this hearing, Battle conceded his failure to comply with Article 6, but argued that, under the reinstatement provision quoted in foot-

note 2, a union member suspended for non-payment of dues who tenders the dues and fees and applies for reinstatement before he has been cited to the employer may not thereafter be cited until the union has acted on his application for reinstatement.

The arbitrator did not categorically reject appellant's contention, or wholeheartedly endorse the union's argument to the contrary. Rather, he recognized that Battle's position "raises very important issues both as to the scope of the proceedings under Section 5 of the Union Shop Agreement and as to the extent of the Brotherhood's authority to cite an employee to the Carrier for failure to pay dues." He decided against Battle mainly on the narrow ground' that an employer under a union shop agreement may not inquire into all the internal affairs of a union, or examine union regulations to determine their reasonableness.

On February 7, 1962, Battle filed in the United States District Court for the District of Columbia a complaint against the union and the Terminal Company which he denominated "Mandatory Injunction for Reinstatement; Local [*sic*] Damages for Wrongful Discharge from Employment and for Punitive Damages." He prayed for reinstatement as an employee and as a union member, and also prayed for compensatory and, apparently, for punitive damages. On June 20, 1962, the District Court dismissed the complaint for lack of juris-

---

retary shall report such suspension on the next quarterly per capita tax report to the Grand Lodge."

2. Article 7 of the union's statutes provides as follows:
   "Section 1. A member suspended for non-payment of dues may apply for reinstatement upon payment of the reinstatement fee plus any unpaid dues or assessment for which he was liable at time of suspension; except that if the suspended member is subject to the terms and conditions of a union shop agreement between the Brotherhood and the Employer, and has been cited by the

Brotherhood to the Employer for non-compliance with the terms and conditions of the union shop agreement, and the suspended member tenders dues and/or fees and makes application for reinstatement to membership in the Brotherhood before his seniority and employment have been terminated by the Employer, pursuant to the provisions of the union shop agreement, no officer or member is authorized to accept such application for reinstatement in the Brotherhood, without prior approval of the General Chairman under whose jurisdiction the suspended member is subject, before his application can be acted upon by the lodge." .

**744**

diction of the subject matter. Battle appeals.

Had the appellant sought only to recover damages for wrongful discharge, the District Court would have had jurisdiction. Moore v. Illinois Central Ry. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941). But he also sought reinstatement, with respect to which the National Railroad Adjustment Board has exclusive initial jurisdiction. In Order of Ry. Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318 (1946), the Supreme Court said courts should not interpret such agreements prior to interpretation by the Adjustment Board. It repeated that statement in Slocum v. Delaware L. & W. R. Co., 339 U.S. 239, 244, 70 S.Ct. 577, 579, 94 L.Ed. 795 (1950), and said:

> "Our holding here is not inconsistent with our holding in Moore v. Illinois Central R. Co., 312 U.S. 630 [61 S.Ct. 754, 85 L.Ed. 1089]. Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. * * *

> "* * * We hold that the jurisdiction of the Board to adjust grievances and disputes of the type here involved is exclusive. * * *"

The Seventh Circuit had before it a case somewhat similar to this in Walters v. Chicago and North Western Ry. Co., 216 F.2d 332, 335 (1954). After noting the Moore, Pitney and Slocum cases, it said:

> "In the instant case the plaintiff's complaint clearly shows that she did not accept her discharge as final and merely file an action at law for damages and breach of contract. Instead in the caption of her complaint she stated, 'Equitable Relief Sought,' and in addition to damages she sought reinstatement 'to her former position with her seniority, pension, vacation and pass rights unimpaired * * *.' This complaint brought the plaintiff clearly within the Slocum case rather than within the facts of the Moore case."

In like manner, we hold that Battle's complaint was such that the Slocum case is applicable.

The cases of Cunningham v. Erie Railroad Co., 266 F.2d 411 (2nd Cir. 1959), and Nobile v. Woodward, 200 F.Supp. 785 (D.C.E.D.Pa.1962), cited by appellant, are not to the contrary. Both turned on alleged *discriminatory* discharges, an element admittedly not present in this case.

At the close of the trial, District Judge Hart said:

> "This is a case actually where the admitted action of the Union outrages my sense of justice, fair play and common sense and whatnot, but under the law apparently this Court has no jurisdiction to grant any of the relief prayed for."

We too think the union acted arbitrarily in suspending Battle and causing him to be discharged from employment he had held continuously for more than a decade, merely because of an eight dollar delinquency in dues—a sum he tendered to the union before it acted. Reluctantly, we uphold the District Court judgment as, under the adjudicated cases, the matter seems to have been beyond its jurisdiction due to the fact that Battle sought a continuing relationship with the union. Undoubtedly unions should be permitted wide latitude in policing the payment of dues. But surely this could be readily accomplished by sanctions far less harsh than summary expulsion and discharge.

For the reasons stated, the judgment of the District Court is

Affirmed.

BURGER, Circuit Judge (concurring).

I concur in the court's opinion but I do so with the same reluctance expressed

by Judge Hart in the District Court and by Judge Miller. Even if the union's position conforms to the letter of the applicable provisions of its own internal governance, its action surely violates the spirit of the relationship between a union and its members. For an insignificant violation a long time union member is "disciplined" to the point of near destruction, perhaps to "make an example of him."

Recently we pointed out in another context [1] that the requirement of fair dealing between a union and its members is fiduciary in nature and arises out of the large degree of dependence of the individual employee on the union and the large powers vested in the union. The power of a union over its members is enormous and in all too many occasions, this being one of them, that power is exercised with arbitrariness incompatible not only with the fiduciary obligation of the union but also with basic standards of fairness. As a fiduciary the actions of a union toward its members must reflect a moral equivalent of its great power over the daily lives and affairs of its members.[2] Some unions seek to justify harsh action toward members by the necessities of survival and I would not minimize the importance of continuity. But a union's obligation to survive is not to be confused with the comparable rights and powers of sovereign states; a union is not a sovereign but a servant. I suggest this is implicit in what we recently said of the rights of the individual:

"From the beginning of his employment, the union which can require his membership or command his discharge is therefore charged with an obligation of fair dealing which includes the duty to inform the employee of his rights and obligations so that the employee may take all necessary steps to protect his job.

"A union may not treat as adversaries either its members or those potential members whose continued employment is dependent upon union membership. * * * International Union of Electrical, Radio and Machine Workers v. National Labor Relations Board, 113 U.S.App.D.C. 342, 346, 307 F.2d 679, 683, cert. denied, 371 U.S. 936 [83 S.Ct. 307, 9 L.Ed.2d 270] (1962)."

1. International Union of Electrical, Radio and Machine Workers v. National Labor Relations Board, 113 U.S.App.D.C. 342, 307 F.2d 679, cert. denied, 371 U.S. 936, 83 S.Ct. 307, 9 L.Ed.2d 270 (1962).

2. See Interesting article and cases collected in Summers, Individual Rights In

Collective Agreements and Arbitration, 37 N.Y.U.L.Rev. 362 (1962); Cox, Rights Under a Labor Agreement, 69 Harv.L.Rev. 601 (1956); Hanslowe, Individual Rights in Collective Labor Relations, 45 Cornell L.Q. 25 (1959).