**Amadeo T. YBARRA, Plaintiff,**

v.

**BROTHERHOOD RAILWAY CARMEN OF AMERICA, Defendant.**

**Civ. A. No. 63–C–75.**

United States District Court
S. D. Texas,
Corpus Christi Division.

March 12, 1964.

11. S.Rep. No. 105, 80th Cong., 1st Sess., pp. 8, 27, Legislative History of the Labor

J. Marvin Ericson, Corpus Christi, Tex., for plaintiff.

Mulholland, Hickey & Lyman, Toledo, Ohio, and Fulbright, Crooker, Freeman, Bates & Jaworski, H. L. Deakins, Jr., Houston, Tex., for defendant.

GARZA, District Judge.

The Court has before it the motion of Defendant, Brotherhood Railway Carmen of America, to dismiss, or in the alternative, for summary judgment.

The Plaintiff was employed from February 22, 1950, until June 26, 1962, as a carman by the Texas Mexican Railway Company.

Under the Railway Labor Act, 45 U.S.C. § 151 et seq., Defendant entered into a Union Shop Agreement with the Railroad Company on February 5, 1953, which agreement became effective March 1, 1953, and which required carmen employees of the Railroad to join Defendant Brotherhood and maintain their membership therein as a condition of their employment.

Plaintiff had been a member of Defendant Brotherhood as required by the Union Shop Agreement.

In February, 1961, Plaintiff was hospitalized and underwent surgery, returning to service with the Railroad Company on September 1, 1961. He paid one month's dues on October 31, 1961, which were credited to him for the month of September.

On December 8th he was advised by the local chairman of Defendant that he had until December 11th to pay his Union dues, but on December 9th he became ill and was again hospitalized until December 16th.

Plaintiff claims to have written Defendant's local chairman on December 18th, requesting information as to the status of his membership dues, to which he received no answer.

Plaintiff received from Defendant's general chairman a letter dated January 8, 1962, informing him that his membership had been suspended and advising him to become reinstated. Plaintiff claims to have written a letter to Defendant's local secretary on February 3, 1962, requesting an application for readmission, to which he also received no reply.

On February 8, 1962, Defendant's chairman conveyed to the general manager of the Railroad a notice dated December 27th that Plaintiff had failed to comply with the terms of the Union Shop Agreement for the reason that he failed to remain a member.

Plaintiff was notified on February 12, 1962, by the Railroad that his employment would be terminated on February 28th. Plaintiff then made numerous telephone calls to various officials of Defendant Brotherhood, attempting to become reinstated, but with no success. He also requested a hearing under the Union Shop Agreement, which was held by an official of the Railroad on March 1, 1962.

The decision that Plaintiff was in violation of the Union Shop Agreement and should be discharged, was appealed to the highest operating officer of the Railroad, and then to a neutral arbitrator, all as provided by the Union Shop Agreement. The final decision of the arbitrator upholding Plaintiff's discharge by the Railroad was submitted June 22, 1962, and the termination of Plaintiff's employment which had been stayed during this administrative remedy, was made effective June 26, 1962.

Plaintiff alleges that his discharge by reason of the willful and wrongful actions of Defendant Brotherhood in breaching its contract with him under its Constitution, resulted in the loss of earnings, seniority rights and status, hospital benefits, life insurance and medical benefits, vacation benefits, disability and retirement benefits, and survivors' benefits. The breach most emphasized by

Plaintiff is the failure or refusal of Defendant to furnish him with proper forms to apply for re-admittance, apparently on the theory that had he been re-admitted to the Brotherhood before being cited to the Railroad for discharge, he would not have been so cited and would have retained his employment.

Defendant argues in support of its motion that it is uncontradicted that Plaintiff was delinquent in his dues for more than sixty days in violation of the Union Shop Agreement, and that Defendant had a perfect right to notify the Railroad of such violation and have Plaintiff discharged regardless of whether he was re-admitted. Defendant points out that the final decision of the arbitrator precludes the Plaintiff from attacking the fact of his breach of the Union Shop Agreement which resulted in his discharge.

This Court agrees that the Railroad was required by its contract with the Brotherhood to terminate the employment of the Plaintiff, and its action in so doing was upheld by the arbitration decision.

The Court further agrees with Defendant that a wrongful failure by the Brotherhood to allow Plaintiff to apply for re-admission would not, standing alone, give rise to any cause of action based on his discharge for his own private breach of the Union Shop Agreement.

Since this is not a suit for damages caused by a wrongful discharge, but is an action based on the Defendant Brotherhood's alleged breach of contract with Plaintiff, the Court must determine at this stage whether there is any material issue of fact regarding a breach of contract by Defendant under its Constitution.

If the Brotherhood committed no breach, then Plaintiff must allege and prove that it acted with hostile discrimination toward him in causing his discharge by the Railroad.

Cunningham v. Erie R. Co., 2 Cir., 1959, 266 F.2d 411, rejected the contention that a tender of delinquent dues prior to termination of service was a sufficient compliance with the Union Shop Agreement, but held that the plaintiff did state a cause of action in asserting that his discharge was caused by hostile discrimination. Cunningham's dispute with the Union in that case arose when he was deprived of his seniority rights, refused to pay his Union dues, and demanded action by the Union to restore his seniority.

The Supreme Court has consistently construed the Railway Labor Act, 45 U.S.C. § 151 et seq., as requiring Union representation to be exercised without "hostile discrimination" toward any one group. These cases involved hostility of the Unions to negroes. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80; Steele v. Louisville & Nashville R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283.

Close in point to the present case is Battle v. Brotherhood of Railway and Steamship Clerks, etc., D.C.Cir., 1963, 320 F.2d 742. Battle joined the defendant Union as required by its union shop agreement with his employer, the Washington Terminal Company. After paying Union dues punctually for more than nine years, the Union suspended him when he became two months in arrears in the payment of a total of $8.00 dues. The Union refused to accept his tender of the dues and cited him to his employer for failing to maintain membership. After hearings and arbitration, his discharge was upheld. The District Court, although outraged by the harsh penalty invoked by the Union, determined it had no jurisdiction of the suit, and was reluctantly upheld by the Court of Appeals which said, at p. 744 of 320 F.2d:

"We too think the union acted arbitrarily in suspending Battle and causing him to be discharged from employment [that] he had held continuously for more than a decade, merely because of an eight dollar delinquency in dues—a sum he tendered to the union before it acted.

Reluctantly, we uphold the District Court judgment as, under the adjudicated cases, the matter seems to have been beyond its jurisdiction due to the fact that Battle sought a continuing relationship with the union. Undoubtedly unions should be permitted wide latitude in policing the payment of dues. But surely this could be readily accomplished by sanctions far less harsh than summary expulsion and discharge."

This Court agrees with the Plaintiff that the action of the Union in causing his discharge after many years of service was harsh and caused him great pecuniary loss. Plaintiff has furnished affidavits by other Union members who have at times been more than sixty days delinquent in their dues and who were allowed to pay the amount in arrears, or, after suspension, to become reinstated—all without interruption of employment. However, assuming that the Union did act arbitrarily and severely, there is no question but that the Plaintiff was delinquent in his dues for more than sixty days and that the Brotherhood, under Section 80 of its Subordinate Lodge Constitution, had the right, if not the duty, to suspend his membership. When the Plaintiff returned to service on September 1, 1961, he knew, or should have known, that his Union dues were again payable monthly in advance. He paid for only one month on October 31, 1961, and the Court has before it evidence of conversations during the month of November between Plaintiff and local officials of the Brotherhood concerning his dues in arrears. As in the case of other members whose affidavits are presented, Plaintiff was given an opportunity to bring his account up to date, which he should have done before his hospitalization in December.

This Court finds that the Plaintiff was not wrongfully suspended from membership, nor was he wrongfully cited to his employer for violation of the Union Shop Agreement, nor was he wrongfully discharged by the Railroad. Upon this state of facts, no breach of contract by the Union has been shown, and there are no facts before the Court which could raise any issue of hostile discrimination.

Finding that Plaintiff's complaint does not state any cause of action upon which relief can be granted, the motion of Defendant Brotherhood to dismiss will be and is hereby granted, and judgment of dismissal is this day being entered.

Clerk will notify counsel.