# TRANSCONTINENTAL & WESTERN AIR, INC. *v.* KOPPAL.

No. 509.   Argued April 8–9, 1953.—Decided June 1, 1953.

*Horace G. Hitchcock* argued the cause for petitioner. With him on the brief were *Gerald B. Brophy, Ruby D. Garrett, Harold L. Warner, Jr.* and *Francis E. Koch.*

*Fred J. Freel* and *Ray D. Jones, Jr.* argued the cause for respondent. With them on the brief was *John R. Baty.*

MR. JUSTICE BURTON delivered the opinion of the Court.

This case presents two questions: (1) whether a discharged employee of a carrier that is subject to the Railway Labor Act is precluded by that Act from resorting to a state-recognized cause of action for wrongful discharge and, if not, (2) whether, in such action, he must show that he has exhausted his administrative remedies, under his contract of employment. For the reasons hereafter stated, our answer to the first question is no and to the second, yes,. provided the applicable state law so requires. After stating the case, we shall discuss the second question first.

Respondent Koppal is a citizen of Kansas who, in 1949, was employed as a master mechanic in Kansas City, Missouri, by petitioner, Transcontinental & Western Air, Inc., a Delaware corporation. At all times material to this case, petitioner has been a carrier by air, engaged in interstate commerce and subject to Title II of the Railway Labor Act.[1] The terms of respondent's employment contract were stated in a written agreement between petitioner and the International Association of Machinists. That association was a union which, for collective-bargaining purposes, represented respondent and the other mechanics in the employ of petitioner, although respondent was not a member of the union.

---

[1] 49 Stat. 1189 *et seq.*, 45 U. S. C. §§ 181–188.

November 8, 1949, respondent reported to his employer by telephone that he was not well and would not be able to work that day. Before noon, a representative from petitioner's Industrial Relations Department made an unexpected call at respondent's home. He found respondent there with two of petitioner's employees, one of whom also had taken sick leave. While the testimony is conflicting, there is substantial evidence to support a conclusion that respondent was not sufficiently ill to justify his staying at home and that, by prearrangement, he met there with two other employees while preparing to take an examination to qualify as a flight engineer. On respondent's return to work the next day, he was suspended from employment on a charge of abuse of the sick-leave provisions of his contract and notified that a hearing would be held on that charge November 11, pursuant to the grievance procedure in his contract. He attended the hearing, which was held before a representative of petitioner other than the one bringing the complaint. At its conclusion, the hearing officer stated that there had been a severe abuse of the sick-pay policy and that respondent would be discharged. In view of respondent's past favorable record, the hearing officer asked him whether he would prefer to resign and advised him that he could appeal even if he resigned.

Respondent resigned, stating that he did so "under protest." He took no appeal under his employment contract but, June 30, 1950, instituted the present proceeding in the United States District Court for the Western District of Missouri, claiming diversity of citizenship and seeking $7,500 compensatory and $15,000 punitive damages.

During the trial, which was before a jury, petitioner (then defendant) moved for a directed verdict in its favor and made a similar motion at the close of evidence. Both motions were denied and the jury returned a verdict

of $7,500 for respondent. The court set aside the verdict and dismissed the complaint on the ground that respondent had failed to appeal the original decision of the hearing officer and had otherwise failed to exhaust the remedies prescribed in his employment contract. The Court of Appeals, with one judge dissenting, reversed that judgment and remanded the case for further proceedings. 199 F. 2d 117. Because of differing opinions expressed as to the effect of our decisions in *Moore* v. *Illinois Central R. Co.*, 312 U. S. 630, and *Slocum* v. *Delaware, L. & W. R. Co.*, 339 U. S. 239, and due to the importance of the case in relation to the Railway Labor Act, we granted certiorari. 344 U. S. 933.[2]

The jurisdiction of the District Court rested upon diversity of citizenship and an adequate amount in controversy. The complaint sought judgment for damages resulting from the alleged unlawful discharge of respondent in violation of a contract of employment made in Missouri, to be performed in Missouri and agreed by the parties to be a "Missouri contract." Accordingly, if the Railway Labor Act were not involved, there would be no question but that the substantive law of Missouri should determine the requirements of the cause of action, the interpretation of the contract and the measure of damages

---

[2] The grant was limited to questions 1 and 2 presented by the petition for the writ, *viz.:*

"1. Whether in a diversity action for wrongful discharge by an employee against a carrier subject to the provisions of the Railway Labor Act, the Act precludes the application by the District Court of state law, otherwise controlling, governing the right to bring the action.

"2. Whether the decisions of this Court in *Moore* v. *Illinois Central R. Co.*, 312 U. S. 630, and *Slocum* v. *Delaware, L. & W. R. Co.*, 339 U. S. 239, bar the application of state law requiring an employee to attempt to adjust his dispute with his employer before he may seek redress in state courts for alleged breach of a collective bargaining agreement made pursuant to the Railway Labor Act."

to be applied. *Erie R. Co.* v. *Tompkins,* 304 U. S. 64; *Klaxon Co.* v. *Stentor Electric Mfg. Co.,* 313 U. S. 487.

No decision of the Supreme Court of Missouri has been cited on the point but the law of Missouri has been shown, by the following cases, to be that an employee must exhaust the administrative remedies under his contract of employment in order to sustain his cause of action in such a case.

The United States Court of Appeals for the Eighth Circuit, in 1934, affirmed a decision of the United States District Court for the Eastern District of Missouri to that effect. *Harrison* v. *Pullman Co.,* 68 F. 2d 826. That was a diversity case, removed from a Missouri state court, in which a discharged porter sued his employer, the Pullman Company, for damages for his alleged unlawful discharge in November, 1926. The terms of his employment were stated in a printed agreement which contained a complete code for the adjustment of such disputes. The code called for an initial appeal by the employee to a district official of the company, a subsequent appeal to the highest local officer of the company designated to handle such matters, then an appeal to the Zone General Committee and finally to the Bureau of Industrial Relations. The porter made no substantial attempt to follow this procedure beyond the district official and none whatever to reach the Zone General Committee. Instead, about five years later, he brought suit and, in that litigation, the United States Court of Appeals, in affirming a directed verdict for the employer, said:

"Appellant in terms sues because of an alleged breach of this contract, and, to prevail, he must show that he has brought himself within its terms and has been unable to secure a satisfactory adjustment by the means therein expressly provided. This he has

failed to do, and for this reason he is unable to present his case in court as a justiciable controversy." *Id.*, at 827.

Similarly, in 1936, the St. Louis Court of Appeals, Missouri, in *Reed* v. *St. Louis S. W. R. Co.*, 95 S. W. 2d 887 (not published in State Reports), took a like position. There a discharged conductor sued his employer, the St. Louis Southwestern Railroad Company, for damages for his alleged unlawful discharge in 1928. The terms of his employment were stated in a written contract between the Order of Railway Conductors and the railroad. This prescribed a complete code for the hearing and review of discharges. The conductor was charged with intoxication and attended a prescribed hearing, which was held on that charge, before an assistant superintendent of the company. This resulted in the conductor's discharge but he resorted to none of the administrative appeals prescribed in the code. Instead, he sued his employer in a state court and won a verdict and judgment for damages due to his discharge. The St. Louis Court of Appeals reversed that judgment because the trial court had failed to sustain the employer's demurrer which was based on the ground that the conductor had failed to exhaust the remedies prescribed in his contract.[3]

---

[3] ". . . This assignment of error is based upon the rule that where a contract of employment provides, as in the instant case, that a discharged employee may seek redress by appealing to certain designated officers, boards, or tribunals, such an employee is required to pursue and exhaust his contract remedy and cannot properly complain to a court for redress until he has exhausted the remedies accorded him by his contract. The point is well taken." *Id.*, at 888–889.

". . . It is well settled that, where contracting parties either agree or are required by law to resort to a designated tribunal for the adjustment of controversies, they must exhaust such remedy before resorting to the courts for redress." *Glass* v. *Hoblitzelle*, 83 S. W. 2d 796, 802 (Tex. Civ. App.). See also, *Bell* v. *Western R. Co.*, 228 Ala. 328, 153 So. 434. This quotation and citation are relied on in the *Reed* case, at 889.

Respondent's contract, in the instant case, consisted simply of his employment by petitioner pursuant to the terms of a written agreement between petitioner and the mechanics and related employees in its service, as represented by the International Association of Machinists. That agreement was entered into "in accordance with the provisions of Title II of the Railway Labor Act, as amended . . . ." It contained detailed provisions as to grievance procedure and sick leave. It included provisions that no employee in respondent's status shall be discharged—

> "without a fair hearing before a designated representative of the Company other than the one bringing complaint against the employee. . . . At a reasonable time prior to the hearing, such employee and his duly authorized representative will be apprised, in writing, of the precise charge and given a reasonable opportunity to secure the presence of necessary witnesses. . . . A written decision will be issued within five (5) work days after the close of such hearing. If the decision is not satisfactory, then appeal may be made in accordance with the procedure prescribed in Step 3."

Step 3 provided for an appeal to the chief operating officer of the company. Notice of intent to appeal must be in writing and made within ten work days after the above-mentioned decision which is part of Step 2. If the decision in Step 3 is not satisfactory to the union, the matter then may be referred by the system general chairman, acting for the union, to the system board of adjustment or, by mutual agreement, to arbitration. This procedure is comparable to that described in the Railway Labor Act, which provides that disputes between an employee and a carrier "shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes," then by appropriate ad-

justment boards and finally by the National Air Transport Adjustment Board. 49 Stat. 1189–1190, 45 U. S. C. §§ 184, 185.

Under the law of Missouri, as shown above, respondent was required to show exhaustion of administrative remedies under his employment contract in order to sustain his cause of action. As he did not do so, the District Court's dismissal of his complaint was justified, unless the fact that petitioner was a carrier subject to the Railway Labor Act or the fact that the employment contract was drafted pursuant to that Act should make a difference.

The important point is that while the employment contract conforms to the policy of the Railway Labor Act and the Act provides a procedure for handling grievances so as to avoid litigation and interruptions of service, the Act does not deprive an employee of his right to sue his employer for an unlawful discharge if the employee chooses to do so.

> "[W]e find nothing in that [Railway Labor] Act which purports to take away from the courts the jurisdiction to determine a controversy over a wrongful discharge or to make an administrative finding a prerequisite to filing a suit in court. . . . The District Court and the Circuit Court of Appeals properly decided that petitioner was not required by the Railway Labor Act to seek adjustment of his controversy with the railroad as a prerequisite to suit for wrongful discharge." *Moore* v. *Illinois Central R. Co.*, 312 U. S. 630, 634, 636.

We amplified the foregoing statement in *Slocum* v. *Delaware, L. & W. R. Co.*, 339 U. S. 239, 244, as follows:

> "Moore [in 312 U. S. 630] was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement

and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, and does not involve questions of future relations between the railroad and its other employees. If a court in handling such a case must consider some provision of a collective-bargaining agreement, its interpretation would of course have no binding effect on future interpretations by the Board."

The result is that, whereas, under the Railway Labor Act, the Adjustment Board has exclusive jurisdiction to adjust grievances and jurisdictional disputes of the type involved in the *Slocum* case, that Board does not have like exclusive jurisdiction over the claim of an employee that he has been unlawfully discharged. Such employee may proceed either in accordance with the administrative procedures prescribed in his employment contract or he may resort to his action at law for alleged unlawful discharge if the state courts recognize such a claim. Where the applicable law permits his recovery of damages without showing his prior exhaustion of his administrative remedies, he may so recover, as he did in the *Moore* litigation, *supra,* under Mississippi law.[4]

---

[4] Moore received a judgment for $4,183.20, as damages for his wrongful discharge, without establishing his exhaustion of his administrative remedies under his employment contract. For related proceedings, see *Moore* v. *Yazoo & M. V. R. Co.,* 176 Miss. 65, 166 So. 395; *Moore* v. *Illinois Central R. Co.,* 180 Miss. 276, 176 So. 593; 24 F. Supp. 731; 112 F. 2d 959; 136 F. 2d 412. See also, *Texas & N. O. R. Co.* v. *McCombs,* 143 Tex. 257, 183 S. W. 2d 716.

On the other hand, if the applicable local law, as in Missouri, requires an employee to exhaust his administrative remedies under his employment contract in order to sustain his cause of action, he must show that he has done so. Here respondent was employed by a carrier, subject to Title II of the Railway Labor Act, and his employment contract contained many administrative steps for his relief, all of which were consistent with that Act. Accordingly, while he was free to resort to the courts for relief, he was there required by the law of Missouri to show that he had exhausted the very administrative procedure contemplated by the Railway Labor Act. In the instant case, he was not able to do so and his complaint was properly dismissed.

The judgment of the Court of Appeals, therefore, is reversed. The judgment of the District Court is affirmed and the cause is remanded to it.

*Reversed and remanded.*

MR. JUSTICE DOUGLAS dissents.

MR. JUSTICE REED took no part in the consideration or decision of this case.