**L. L. PRICE, Appellant,**

v.

**UNION PACIFIC RAILROAD, Appellee.**

**No. 15649.**

United States Court of Appeals
Ninth Circuit.
May 20, 1958.

Rehearing Denied July 7, 1958.

---

Samuel S. Lionel, Las Vegas, Nev., for appellant.

Cory, Denton & Smith, Calvin M. Cory, Las Vegas, Nev., Bennett, Renwich & Davis, E. E. Bennett, Edward C. Renwick, Malcolm Davis, Los Angeles, Cal., for appellee.

Before HEALY, POPE, and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

L. L. Price brought this action against Union Pacific Railroad Company, to recover damages in the amount of $118,-517, alleging that he had been wrongfully dismissed as a trainman.

After the filing of an answer and the obtaining of certain admissions, defendant moved for a summary judgment. The motion was made on the ground that a determination made by the National Railroad Adjustment Board (Board) that the dismissal was valid precluded this independent court action. Agreeing with this view, the trial court granted summary judgment for defendant. Plaintiff appeals.

The single question presented on this appeal is whether, in view of the action of the Board in denying Price's claim for restoration with all rights unimpaired, and for back pay, the trial court was without jurisdiction to entertain this independent court action for damages.

Price had been employed by the railroad as a brakeman on its South Central District, operating out of Las Vegas, Nevada. On July 12, 1949, he was instructed to deadhead on a 9:15 p. m. train to Nipton, California, a distance of 56.7 miles, for swing service at Nipton. He reached Nipton at 10:25 p. m., and telephoned the Las Vegas train dispatcher. The dispatcher told him to wait at Nipton until 4:00 a. m., at which time he was to serve as a swing brakeman on a train due at that hour.

Price, however told the dispatcher that there was no place to eat or sleep in Nipton, and that he would return to Las Vegas on the first eastbound train. The dispatcher told Price not to do this, but he nevertheless returned to Las Vegas on a train which reached there at 12:35 a. m., on July 13. After obtaining food in Las Vegas, Price called the train dispatcher and stated that he was ready to return to Nipton on a train due to depart at 1:45 a. m. The dispatcher instructed Price not to return to Nipton.

On July 16, 1949, the railroad charged Price with violating operating rules 700 and 702. He was given written notice at that time to appear for investigation and hearing on these charges at 10:00 a. m., on the following day. Price appeared at the specified time and place, and requested a postponement upon the ground that his union representative was not present. A postponement until 9:30 the following morning was granted.

At this postponed hearing, Price requested a further postponement on the ground that his representative was still not available. He was then told that the investigation and hearing would be deferred until 2:30 p. m., and was advised to get another representative.

Price did not appear at 2:30 p. m., and a hearing was conducted in his absence. Questions were propounded of various employees by an assistant superintendent, and a record of the proceedings was transcribed. On July 24, 1949, Price was discharged from the service of the carrier.

Price requested the Brotherhood of Railway Trainmen to seek his reinstatement with pay for time lost and all seniority and other rights restored. The Brotherhood negotiated with the railroad, as a result of which the latter offered to take Price back on a leniency basis. Price rejected this offer.

On January 11, 1951, Price's claim for restoration to service with all rights unimpaired and for back pay was submitted by the Brotherhood, in behalf of Price, to the Board.[1] On June 25, 1952, the Board issued an award denying Price's claim in its entirety. On June 6, 1953, Price instituted this suit for damages in the District Court of the United States for the District of Nevada. Jurisdiction of the district court is based on diversity of citizenship.

As before indicated, the railroad was granted summary judgment on the ground that the Board award denying Price's claim barred this independent court action for damages. On this appeal, Price argues that a Board award denying the claim of a discharged employee does not preclude a subsequent independent court action for damages. Alternatively, he argues, if a Board award has such finality, it is only where the Board has made a determination on the merits, and no such determination was made in this case.

Under the act, an employee who believes that he has been wrongfully discharged may petition the Board for a redress of his grievance. Upon the filing of such a petition, the appropriate division of the

[1]. Pursuant to § 3, First (i) of the Railway Labor Act (act), as amended, 45 U.S.C.A. § 153, First (i).

Board is authorized to conduct a hearing, make findings, and issue an award in writing. If the award is in favor of the petitioner, the Board is to issue an order directing the carrier to make the award effective. If the carrier does not comply, the petitioner may institute an enforcement proceeding in the district court.[2]

 Instead of pursuing this administrative remedy, however, an employee may seek relief by way of an independent court action, providing the state law does not require him to first exhaust his administrative remedies.[3] If, however, the aggrieved employee elects to proceed with his administrative remedy, and there obtains an adjudication on the merits, the award is "final and binding" upon both parties to the dispute, except in so far as it shall contain a money award.[4]

When such an award is adverse to the petitioner, he may nevertheless seek review thereof on a ground amounting to a denial of due process of law. Ellerd v. Southern Pacific Railroad Co., 7 Cir., 241 F.2d 541. He may not, however, institute an independent court action to recover damages or obtain other relief.

In the present action, Price did not seek a review of the Board award. This is an independent suit for damages. Under the principles stated above, therefore, the court was without jurisdiction to entertain the action if the Board award represents a determination on the merits.

The question on the merits in this controversy is whether, under the terms of employment and the circumstances of this case, the railroad was entitled to discharge Price because of his return from Nipton to Las Vegas contrary to the directions of the train dispatcher. This was one of the two questions which Price submitted for Board determination. The other question which Price submitted to the Board was whether, prior to his discharge, he was accorded the kind of a hearing prescribed in the agreement between the railroad and the Brotherhood governing wages and working conditions.

In denying Price's claim, the First Division of the Board said:

"If the carrier is to have efficient operations on its railroad, employes must be relied on to obey operating instructions and orders. Claimant was found to have wilfully disobeyed his orders. This was insubordination and merited discipline.

"The employe has been tendered reinstatement on a leniency basis but seeks complete vindication on the grounds that he was denied the investigation provided by the rules of agreement. Thus, the only question for review is whether there was substantial compliance with the investigation rule.

"Basically, the complaint is that the hearing was held when the claimant was not present."

The Board then proceeded to discuss the manner in which the investigation

2. Section 3, First (i–p) of the act, as amended, 45 U.S.C.A. § 153 First (i–p).

3. Moore v. Illinois Central Railroad Company, 312 U.S. 630, 61 S.Ct. 754, 85 L. Ed. 1089; Transcontinental & Western Air v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325. It is not here contended that the law of Nevada required Price to exhaust the administrative remedy before instituting this court action.

4. Section 3, First (m) of the act, as amended, 45 U.S.C.A. § 153, First (m); Elgin, Joliet & Eastern R. Co. v. Burley,

325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886, reargued 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928; Washington Terminal Co. v. Boswell, 75 U.S.App.D.C. 1, 124 F.2d 235, affirmed per curiam by an equally divided vote 319 U.S. 732, 63 S. Ct. 1430, 87 L.Ed. 1694. That the award must represent an adjudication on the merits in order to be final and binding, see Michel v. Louisville & N. R. Co., 5 Cir., 188 F.2d 224, 226; Washington Terminal Co. v. Boswell, supra, 124 F.2d at page 249; Koelker v. Baltimore & Ohio Railroad Co., D.C., 140 F.Supp. 887, 889.

was conducted by the carrier. It was concluded that none of Price's rights in that regard was abridged. The claim was accordingly denied.

It therefore appears that the Board made no determination on the merits of Price's complaint. The Board neither found nor concluded that the railroad was entitled to discharge Price. The written decision of the Board does not even mention this issue other than to report that "claimant was found to have wilfully disobeyed his orders." The finding thus reported was obviously not its own, but that of the superintendent of the railroad.

The reason that the Board did not deal with the merits of the controversy is that it believed, as stated in its decision, that "the only question for review is whether there was substantial compliance with the investigation rule." This was a plain misconstruction of Price's submission to the board, since he had specifically presented the question on the merits.[5]

Appellee argues that, if Price believed that the award did not represent a determination on the merits, he could have obtained an interpretation under the "finality" provision of the act.[6]

■ There was here no dispute "involving an interpretation of the award," as those words are used in the statute. The "award" was an outright denial of the claim,[7] as all parties concede. The statutory provision under which an interpretation of an award may be obtain-

ed does not, in our opinion, apply where the only dispute concerns the grounds relied upon in making an unambiguous award.

■ We conclude that Price did not obtain an adjudication upon the merits in the proceedings before the Board, and that the trial court therefore had jurisdiction to entertain this independent action for damages.

Reversed and remanded for further proceedings not inconsistent with this opinion.

HEALY, Circuit Judge (dissenting).

I am unable to go along with the holding of my associates that the Board made no disposition of the merits of appellant's complaint.

The Union, in its submission to the Board, admitted that appellant left Nipton and returned to Las Vegas; and it was not disputed that in doing so he deliberately disobeyed an order of the dispatcher. The Union sought to justify this admitted infraction of an operating order by reference to Section (b) of Article 32 of the Agreement, quoted by my associates in their footnote 5. In disposing of the case the Board, among other things, stated: "If the carrier is to have efficient operations on its railroad, employees must be relied on to obey operating instructions and orders."

It appears to me plain that the Board was of opinion, and in substance held, that the asserted violation by the Company of Article 32, even if true, would

---

5. In the submission to the Board, on behalf of Price, complaint was made of the procedure followed during the railroad's investigation of the incident leading to his discharge. It was then stated:
"The employees further contend that Brakeman Price did not violate any rules of leaving Nipton to secure food. That Brakeman Price was justified in these actions is supported by the provisions of Section (b) of Article 32 of the agreement effective April 1, 1943, reading as follows:
" 'Swing brakemen will not be tied up nor released at points where sleeping and eating accommodations are not available.' "

This statement was followed by a detailed discussion of the reasons why the railroad was not entitled to discharge Price, under the circumstances of this case.

6. The last sentence of § 3, First (m) of the act, as amended, 45 U.S.C.A. § 153, First (m), reads: "In case a dispute arises involving an interpretation of the award, the division of the Board upon request of either party shall interpret the award in the light of the dispute."

7. The Board decision ends with these words: "Award: Claim denied."

not serve to justify an employee's violation of direct operating instructions and his abandonment of his post. Such a ruling would appear to promote safety in railroad operations, which must always take into account considerations of that nature.[1] With its intimate knowledge of the field, the Board is peculiarly equipped to make such a decision.

1. Section one of the Railway Labor Act, 45 U.S.C.A. § 151, under subdivision "Fifth" defines "employee" thus:

"The term 'employee' as used herein includes every person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) * * *".

Section two of the Act, 45 U.S.C.A. § 151a(1), under the heading "General purposes," states one of its purposes to be:

"to avoid any interruption to commerce or to the operation of any carrier engaged therein; * * *".