Richard I. SARRAN, Appellant,

v.

MISSOURI PACIFIC RAILROAD COMPANY, Appellee.

No. 13551.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 23, 1959.

Rehearing Denied Jan. 13, 1960.

Maverick & Tynan, San Antonio, Sam Houston Clinton, Jr., Austin, for appellant.

Eskridge, Groce & Hebdon, San Antonio, for appellee.

BARROW, Justice.

This is a suit for damages brought by appellant, Richard I. Sarran, against appellee, Missouri Pacific Railroad Company, for damages arising from an alleged wrongful discharge of Richard I. Sarran by the Railroad Company. Appellant first made his claim through the railroad officials, as provided by the National Railroad Act, and to and through the National Railroad Adjustment Board. The National Railroad Adjustment Board denied his claim for wrongful discharge, whereupon appellant filed this suit as a common-law action for damages.

Appellant's petition reflected that he had pursued his remedy to and through the National Railroad Adjustment Board, which denied his claim. The appellee presented two special exceptions in the trial court. The first attacked the petition as a whole on the ground that appellant having elected his remedy by pursuing the course through the administrative agencies to a final decision by the National Railroad Adjustment Board, the decision of said board is final and binding on appellant and, therefore, he has no cause of action in this suit. The trial court sustained said special exception, and, upon appellant's refusal to amend, dismissed the suit.

Appellant predicates this appeal upon two points, but under the view we take of the case it is not necessary to pass on the second point.

In his first point appellant contends that the court erred in holding, in effect, that by exhausting his administrative remedies, appellant "had elected his remedies" and "therefore has no cause of action," for damages for wrongful discharge.

The decision of this case involves the construction of the National Railway Labor Act, 45 U.S.C.A. § 153, Subd. (i) and Subd. (m), as follows:

"(i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes. * * *

"(m) The awards of the several divisions of the Adjustment Board shall be stated in writing. A copy of the awards shall be furnished to the respective parties to the controversy, and the awards shall be final and binding upon both parties to the dispute, except insofar as they shall contain a money award. In case a dispute arises involving an interpretation of the award, the division of the Board upon request of either party shall interpret the award in the light of the dispute."

Appellant alleges that on or about July 19, 1956, he was wrongfully discharged by appellee, Railroad Company. That thereafter he pursued his administrative remedies, as provided by the National Railway Act, to and through the National

Railroad Adjustment Board; that said Board denied his claim, and he then filed this suit.

Appellant relies mainly upon two decisions of the U. S. Supreme Court: Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795, and Transcontinental & Western Air, Inc. v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325, as authority for his contention that he must first exhaust his administrative remedy before he can proceed in court, and that the final decision of the National Railroad Adjustment Board does not bar his common-law action for damages.

In 1941, the U. S. Supreme Court in Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, held that an employee claiming wrongful discharge is not required by the Railway Labor Act to seek adjustment of his controversy with the railroad company as a prerequisite to suit for wrongful discharge.

Following the decision in the Moore case, the Supreme Court of Texas in Texas & New Orleans R. Co. v. McCombs, 143 Tex. 257, 183 S.W.2d 716, a suit by McCombs claiming compensation for overtime work, held that he could bring his suit in the State Court without first exhausting his remedy under the National Railway Act.

Thereafter (in 1950) the United States Supreme Court in the Slocum case, supra, held that in a dispute growing out of grievances or out of interpretation of agreements concerning rates of pay, rules or working conditions, State Courts have no power to adjudicate thereon until and unless the Adjustment Board has first acted.

In 1953, the United States Supreme Court recognized that there was confusion as to the rules laid down in the Moore case and the Slocum case and granted certiorari in the Koppal case. In that case the Court held that in States where the local law requires a discharged employee to exhaust his administrative remedies un-der his employment contract before he can resort to the court, he must show that he has done so. Thus it seems that the law, as it stood following the decision in the Koppal case, required appellant, Sarran, to first exhaust his administrative remedies before he could sue in the courts, except that the decision of the Supreme Court of Texas in the McCombs case, supra, which followed the Moore case, held that it is not necessary in Texas to first exhaust administrative remedies.

However, the United States Supreme Court in June, 1959, in Union Pacific R. Co. v. Price, 360 U.S. 601, 79 S.Ct. 1351, 1355, 3 L.Ed.2d 1460, clearly held that the decision of the National Railroad Adjustment Board is final and binding on a discharged railroad employee and precludes his resort to the court in a common-law action for damages. In that case the discharged employee pursued his administrative remedy to a final decision of the National Railroad Adjustment Board, which denied his claim. The District Court granted a summary judgment on the ground that the decision of the Railroad Adjustment Board was final and binding, and the 9th Circuit Court of Appeals reversed that decision. 255 F.2d 663. The Supreme Court reversed the Circuit Court of Appeals and, in passing on the precise question involved in the case at bar, said:

"Congress has said in § 3 First (m) of the Railway Labor Act that the Adjustment Board's 'awards shall be final and binding upon both parties to the dispute, except insofar as they shall contain a money award.' Respondent does not argue that a 'money award' is anything other than an award directing the payment of money. Indeed, it would distort the English language to interpret that term as including a refusal to award a money payment. Thus, the plain language of § 3 First (m), on its face, imports that Congress intended that the Board's disposition of a grievance should preclude a subsequent court action by the

losing party. Furthermore, we have said of the Railway Labor Act that 'the specification of one remedy normally excludes another.' Switchmen's Union [etc.] v. National Mediation Board, 320 U.S. 297, 301, 64 S.Ct. 95, 97, 88 L.Ed. 61. Thus, our duty to give effect to the congressional purpose compels us to hold that the instant common-law action is precluded unless the over-all scheme established by the Railway Labor Act and the legislative history clearly indicate a congressional intention contrary to that which the plain meaning of the words imports. Our understanding of the statutory scheme and the legislative history, however, reinforces what the statutory language already makes clear, namely, that Congress barred the employee's subsequent resort to the common-law remedy after an adverse determination of his grievance by the Adjustment Board."

After a lengthy discussion of the legislative history of the Act, the Supreme Court said:

"To say that the discharged employee may litigate the validity of his discharge in a common-law action for damages after failing to sustain his grievance before the Board is to say that Congress planned that the Board should function only to render advisory opinions, and intended the Act's entire scheme for the settlement of grievances to be regarded 'as wholly conciliatory in character, involving no element of legal effectiveness, with the consequence that the parties are entirely free to accept or ignore the Board's decision * * * (a contention) inconsistent with the Act's terms, purposes and legislative history.' Elgin J. & E. R. Co. v. Burley, 325 U.S. 711, 720–721, 65 S.Ct. 1282, 1288 [89 L.Ed. 1886]."

Regardless of what may have been the previous rule, or any misunderstanding in regard thereto, the decision of the Supreme Court in the Price case is binding on this Court. We therefore hold that the decision of the National Railroad Adjustment Board denying appellant's claim is final and binding and precludes any common-law action in this case. The trial court properly dismissed appellant's suit.

The judgment is affirmed.