Herbert, J.
This action is founded on an alleged breach of contract. It is claimed that the • defendant “wrongfully and fraudulently violated” the provisions of certain rules, regulations and requirements governing the defendant and its employees, which rules constitute the collective bargaining agreement on which plaintiff is suing as a third party beneficiary. The rules relating to physical examinations are set forth in full in plaintiff’s reply, among which are the following:
“Eule 4. Employees who have been disabled by reason of accident or disease which predisposes them to sudden incapacity, or whose sight, color sense or hearing may have thereby become affected, must pass a satisfactory examination before resuming duty.
urn ♦ *
*496 “Buie 7. An employee shall he temporarily relieved from service when well-defined mental or physical impairment is indicated which incapacitates him from properly performing his duties and when such impairment can be benefited by treatment or rest, so that his economic life may be prolonged. He will be restored to service when, in the opinion of the chief surgeon, the cause of disability has been corrected or improved to such an extent as will warrant return to service.
“Buie 8. An employee shall be permanently relieved from service who has a physical or mental impairment, when after a reasonable period of medical or surgical treatment it has been determined that such impairment cannot be materially improved or corrected and he is thereby prevented from properly performing his duties.
“Buie 9. An employee who fails to qualify on examination by the company surgeon and whose condition warrants temporary or permanent retirement from the service, may be reexamined on his own time by the chief surgeon, and, if such employee desires, he may be accompanied by his local chairman and by a physician of his own selection whose fee he shall assume. The decision of the chief surgeon is final, subject only to appeal through the general committee and the operating officials to be designated on the several railroads.
“Buie 10. When it has been finally determined that an employee is unfitted for duty in his occupation, every reasonable effort will be made to provide him with employment which he can perform satisfactorily; otherwise, he will be subject to the provisions for retirement.”
“Memorandum of agreement
“In re Buie 9 of Begulations and Bequirements Governing Physical Examinations of Employees Periodically.
“A fireman who fails to qualify on examination by the chief surgeon of an operating unit of this railroad may upon request have his case considered by a committee of two, one of whom will be appointed by the general manager or other designated official, the other by the general chairman. With the advice of the chief surgeon and with due consideration in borderline cases, this committee will recommend the class of *497 restricted service, if any, and if such service is available, in which he may be used.
“Signed at Buffalo, N. Y., this third of April, 1947 [on behalf of the brotherhoods and the railroad].”
The Railway Labor Act, Section 151 et seq., Title 45, U. S. Code, is very comprehensive and by its terms is an integral part of any brotherhood agreement with a railroad. Pertinent parts, with emphasis supplied, read as follows:
Section 151a:
“The purposes of the chapter are * * * (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.”
Section 152:
“First. It shall he the duty of all carriers, their officers, agents and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.
“Second. All disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representa- ' tives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute.”
Section 153:
“First. There is established'a board, to be known as the ‘National Railroad Adjustment Board,’ * * *
“(a) That the said adjustment board shall consist of 36 members, 18 of whom shall be selected by the carriers and 18 by such labor organizations of the employees, national in scope, as have been or may be organized in accordance with the provisions of Section 152 of this title. íí* * #
“(h) The said adjustment board shall be composed of four divisions * * * as follows:
*498 “First division: To have jurisdiction over disputes involving train- and yard-service employees of carriers', that is, engineers, firemen, hostlers, and outside hostler helpers, conductors, trainmen, and yard-service employees. This division shall consist of ten members, five of whom shall be selected and designated by the carriers and five of whom shall be selected and designated by the national labor organizations of the employees.
“(i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes-, but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the adjustment board with a full statement of the facts and all supporting data bearing upon the disputes.
“ (j) Parties may be heard either in person, by counsel, or by other representatives, as they may respectively elect, and the séveral divisions of the adjustment board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them.
“(k) Any division of the adjustment board shall have authority to empower two or more of its members to conduct hearings and make findings upon disputes, when properly submitted, at any place designated by the division: Provided, however [italicized in statute], that final awards as to any such dispute must be made by the entire division as hereinafter provided.
“ (1) Upon failure of any division to agree upon an award because of a deadlock or inability to secure a majority vote of the division members, as provided in paragraph (n) of this section, then such division shall forthwith agree upon and select a neutral person, to be known as ‘referee,’ to sit with the *499 division as a member thereof, and make an award. Should the division fail to agree upon and select a referee within ten days of the date of the deadlock or inability to secure a majority vote, then the division, or any member thereof, or the parties or .either party to the dispute may certify that fact to the Mediation Beard, which board shall, within ten days from the date of receiving such certificate, select and name the referee to sit with the division as a member thereof and make an award. The Mediation Board shall be bound by the same provisions in the appointment of these neutral referees as are provided elsewhere in this chapter for the appointment of arbitrators and shall fix and pay the compensation of such referees.
“ (m) The awards of the several divisions of the adjustment board shall be stated in writing. A copy of the awards shall be furnished to the respective parties to the controversy, and the awards shall be final and binding upon both parties to the dispute, except insofar as they shall contain a money award. In case a dispute arises involving an interpretation of the award, the division of the board upon request of either party shall interpret the award in the light of the dispute.
( ( # * %
“ (o) In case of an award by any division of the adjustment board in favor of petitioner, the division of the board shall make an order, directed to the carrier, to make the award effective and, if the award includes a requirement for the payment of money, to pay to the employee the sum to which he is entitled under the award on or before a day named.
“(p) If a carrier does not comply with an order of a division of the adjustment board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief, and the order of the division of the adjustment board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, *500 except that on the trial of such suit the findings and order of the division of the adjustment board shall be prima facie evidence of the facts therein stated, and except that the petitioner shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings, unless they accrue upon his appeal, and such costs shall be paid out of the appropriation for the expenses of the courts of the United States. If the petitioner shall finally prevail he shall be allowed a reasonable attorney’s fee, to be taxed and collected as a part of the costs of the suit. The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the adjustment board.”
From the foregoing contractual and statutory provisions, it is difficult to conceive of a more complete administrative procedure for the settlement of all grievances and disputes between the railroads and their employees.
As a general rule the decisions of this court, requiring the exhaustion of administrative remedies as a prerequisite to court action, have been applicable only to procedures before governmental bodies provided for by law. However, “the law gives to parties competent to contract the same authority to agree on the course to be pursued in the event of a breach of the contract as it does to enter the contract and if the contract provides conditions to be performed in case of a breach, the conditions must be complied with before damages can be recovered by reason of breach.” 11 Ohio Jurisprudence (2d), 470, Section 215.
The agreement between the railroad and the brotherhood provides the conditions to be performed in a series of procedural steps “up to and including the chief operating officer of the carrier” (Section 153 (i), supra) for the settlement of grievances as a part of the employee-railway relationship, and these provisions are supplemented by the provisions of the act estabfishing the Railroad Adjustment Board.
It is quite clear that the procedure provided in the “Regulations and Requirements Governing Physical Examinations of Employees” was carried through in its entirety. The record shows that, after the final decision of the chief surgeon, the pro *501 cedure required was even exceeded with respect to the examination and report by Dr. G-urdjian. In fact, it discloses an “appeal through the general committee and the operating officials to be designated” (see rule 9, supra) to a decision by “the chief operating officer of the carrier designated to handle such disputes.” (See Section 153 (i), supra.)
The record also shows that the brotherhood did not pursue any further appeal on behalf of plaintiff. The general chairman of the brotherhood wrote to plaintiff in 1955 that “our committee has exhausted its efforts in having you reinstated to service. ’ ’
Defendant asserts that plaintiff’s failure to appeal to the appropriate division of the National Railroad Adjustment Board as provided in the act constitutes failure to exhaust the administrative remedies provided. Plaintiff asserts that the action for wrongful discharge is available to him in an Ohio court, claiming that his seniority rights had been destroyed, resulting in a breach of his contract of employment, and that he is no longer an employee, having accepted as a final discharge the disqualification by defendant for further work as a fireman. It may be noted that rule 10 refutes this last contention of plain-. tiff.
Plaintiff further seeks to distinguish his ease from those appealable to the National Railroad Adjustment Board because he “does not seek to restored to his former employment.” This is essentially a distinction without a difference. Without the agreement between the brotherhood and the railroad the plaintiff would have had no cause of action at any time for what he called his discharge. That agreement was entered into by the brotherhood primarily for the benefit of its members and provides, in conjunction with the Railway Labor Act, for settlement of all disputes. Consequently, he is bound by it as much as the railroad. Had the plaintiff pursued his appeal to the board and succeeded he would have ultimately received full monetary compensation in back pay as well as reinstatement to his position. Where then would he have been damaged? Had the plaintiff failed in his appeal, it would have been established that the railroad complied with all the requirements of the collective bargaining agreement, and that no breach of contract *502 was committed by it. Exhaustion of the full administrative remedy provided under the agreement and the act would have given the plaintiff all the relief to which he was entitled from an agency federally established and composed of people skilled in the interpretation of carrier-brotherhood bargaining agreements and the rules and regulations promulgated thereunder.
The ease of Moore v. Illinois Central Rd. Co., 312 U. S., 630, 85 L. Ed., 1089, 61 S. Ct., 754, upon which plaintiff places much reliance was discussed by Mr. Justice Burton in the opinion of the court delivered by him in the case of Transcontinental & Western Air, Inc., v. Koppal, 345 U. S., 653, 97 L. Ed., 1325, 73 S. Ct., 906. He also distinguishes the case of Slocum, Chairman, v. Delaware, Lackawanna & Western Rd. Co., 339 U. S., 239, 94 L. Ed., 795, 70 S. Ct., 577. At the outset of his opinion, Mr. Justice Burton said:
“This case presents two questions: (1) Whether a discharged employee of a carrier that is subject to the Railway Labor Act is precluded by that act from resorting to a state-recognized cause of action for wrongful discharge and, if not, (2) whether, in such action, he must show that he has exhausted his administrative remedies, under his contract of employment. For the reasons hereafter stated, our answer to the first question is no and to the second, yes, provided the applicable state law so requires. ’ ’
In the Slocum case, where the railrpad instituted an action for a declaratory judgment in a state court, it was held that the National Railroad Adjustment Board had exclusive jurisdiction under Section 153 (i) of the Railway Labor Act to adjust the dispute between two unions, each claiming for its members certain jobs with the railroad.
Mr. Justice Burton further stated in the Koppal opinion:
‘ ‘ The result is that, whereas, under the Railway Labor Act, the Adjustment Board has exclusive jurisdiction to adjust grievances and jurisdictional disputes of the type involved in the Slocum case, that board does not have like exclusive jurisdiction over the claim of an employee that he has been unlawfully discharged. Such employee may proceed either in accordance with the administrative procedures prescribed in his employment contract or he may resort to his action at law for alleged unlaw *503 ful discharge if the state courts recognize such a claim. Where the applicable law permits his recovery of damages without showing his prior exhaustion of his. administrative remedies, he may so recover, as he did in the Moore litigation, supra, under Mississippi law.
“On the other hand, if the applicable local law, as in Missouri, requires an employee to exhaust his administrative remedies under his employment contract in order to sustain his cause of action, he must show that he has done so. * * *”
Thus, it is established in the Slocum case that, in certain fields of railroad employee-management regulations and disputes, the National Eailroad Adjustment Board has exclusive jurisdiction, and that in those fields no court, state or federal, may invade its jurisdiction.
It is also established in the Koppal case, that, where a state requires the exhaustion of administrative remedies, the plaintiff must establish that fact before he may perfect his suit in the state court.
Ordinarily, an action in a court of this state for alleged wrongful discharge is based on an agreement between employer and employee where there are no provisions embodied in the agreement specifying procedures for settlement of disputes. However, where contractual procedures are provided (as here) in an agreement between a carrier and a brotherhood under the authority of the Eailway Labor Act and containing a complete administrative remedy, it would be very incongruous not to adhere to our rule that where administrative remedies are provided they must be exhausted before an, action may be perfected in court. The facts of this case may be novel but the principle is not.
It is argued that the permissive word, “may,” in Section 153 (i) affords plaintiff the right to elect whether to complete his appeal administratively or to commence his action in the courts for damages for wrongful discharge. This permissive authority to appeal to the National Eailroad Adjustment Board is primarily for the benefit of the employee where the dispute arises over a grievance or an interpretation of the rules and regulations. Experts in the field of railway labor-management relations were available to plaintiff. The administrative remedy *504 was fully provided even though not federally required. The plaintiff, having completed the procedures prescribed in the bargaining agreement itself, did not exhaust the administrative remedy statutorily afforded him, so that we are not persuaded to plaintiff’s contention in this respect.
Finally, it is argued that because the decision of the National Railroad Adjustment Board might be final the plaintiff has a right to elect to bring this action in the courts and thus is granted in effect an election between remedies. The rule requiring exhaustion of administrative remedies before bringing an action in this state is not limited to cases where there is no finality to the administrative order.
In the case of Bashore v. Brown, Treas., 108 Ohio St., 18, 140 N. E., 489, it is stated in the opinion by Jones, J.:
“Due process of law is afforded the owner of property assessed for local improvement, where there is an opportunity to be heard before the body which is to make the assessment, although the decision of that body after hearing is conclusive. (Hibben v. Smith, 191 U. S., 310, 24 Sup. Ct., 88, 48 L. Ed., 195.) ”
In the case of State, ex rel. Lieux, v. Village of Westlake, 154 Ohio St., 412, 96 N. E. (2d), 414, paragraph two of the syllabus states:
“An applicant for a building permit, whose application is refused because of the provisions of a zoning ordinance, cannot secure a writ of mandamus, compelling the issuance of such permit on the ground that the ordinance as a whole is unconstitutional, without first exhausting administrative remedies provided by such ordinance if such administrative remedies might enable such applicant to secure the permit.”
See, also, State Board of Health v. City of Greenville, 86 Ohio St., 1, 98 N. E., 1019, Ann. Cas. 1913D, 52.
While those cases are not directly in point here, they clearly sustain the principle, which this court has followed, that exhaustion of administrative remedies is required even though the ultimate administrative decision might be conclusive.
We conclude that the pertinent provisions of the Railway Labor Act, taken, in conjunction with the collective bargaining agreement between the brotherhood and the railroad here, provided a full and complete administrative remedy for the plain *505 tiff which was not exhausted by him. This action was, therefore, prematurely brought and the petition should have been dismissed. Arriving at this conclusion, we do not find it necessary to consider the other assignments of error.
The judgment of the Court of Appeals is reversed, and final judgment is rendered for the defendant.

Judgment reversed.

"Weygandt, C. J., Zimmerman, Taet, Matthias, Bell and Peck, JJ., concur.