William Edward COTTRELL, Plaintiff,

v.

**GULF, MOBILE AND OHIO RAILROAD**
and Brotherhood Railway Carmen of
America, Defendants.

Civ. A. No. 5634-69.

United States District Court,
S. D. Alabama, S. D.

Jan. 15, 1971.

Warren L. Finch, Mobile, Ala., for plaintiff.

William Kimbrough, Percy Johnson, Jr., Mobile, Ala., for Gulf, Mobile and Ohio.

Allan R. Cameron, Mobile, Ala., Donald W. Fisher, Toledo, Ohio, for Railroad and Brotherhood Railway Carmen of America.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT

DANIEL HOLCOMBE THOMAS, Chief Judge.

This is an action by a discharged railroad employee for reinstatement to service and damages commensurate with his alleged loss. Relief is sought against the railroad employer, the Gulf, Mobile and Ohio Railroad Company, and the labor union which represented him, Brotherhood of Railway Carmen of America. Jurisdiction is based upon the Railway Labor Act, 45 U.S.C. § 151 et seq.; the Labor Management Relations Act, 29 U.S.C. § 158; and 28 U.S.C. § 1337.

The action was tried to the Court on December 15 and 16, 1970, and the Court, after hearing all of the witnesses and examining all of the evidence, makes the following Findings of Fact, Conclusions of Law, and Judgment.

### FINDINGS OF FACT

1. Plaintiff William Edward Cottrell was employed by defendant Gulf, Mobile and Ohio Railroad Company (GM&O) on August 15, 1962. Plaintiff worked for the GM&O as a carman and his normal place of employment was at the GM&O's Frascati Yard, located in Mobile County, Alabama.

2. Plaintiff and other employees of the GM&O who were situated in the craft or class of carmen were represented for purposes of collective bargaining, and other purposes pursuant to the Railway Labor Act (45 U.S.C. § 151 et seq.), by the defendant Brotherhood of Railway Carmen of America (Brotherhood).

Plaintiff, at all times material hereto, was a member of the Brotherhood, and was still a member at the time the trial took place.

3. On Thursday, February 1, 1968, at approximately 11:25 a. m., J. C. Hubbell, the General Foreman of the Car Department of the GM&O, encountered the plaintiff in the machine shop, which was away from his assigned place of work, with his lunch bag open and either eating or about to eat his lunch. Plaintiff's lunch period was 12:00 Noon. General Foreman Hubbell delivered a verbal warning to plaintiff to the effect that if he caught plaintiff doing that again, he would pull him out of service.

4. Plaintiff attempted to talk to General Foreman Hubbell on this occasion, presumably to tell him that he had a headache and was taking food at the early hour for that reason. Hubbell, however, walked away without engaging plaintiff in conversation.

5. The early lunch incident was reported by General Car Foreman Hubbell to Master Mechanic W. C. Gray. Master Mechanic Gray prepared the following letter, dated February 2, 1968, which was hand delivered to plaintiff on Monday, February 5, 1968:

"Mr. Wm. E. Cottrell:

At 11:25 A.M., Thursday, February 1st, 1968, you were caught by Mr. Hubbell, General Car Foreman, in the Machine Shop at Frascati Shop with your lunch bag open and proceeding to eat your lunch.

You have on numerous occasions been warned about stopping work before the whistle blew and this is to hereby advise you that the next time you are caught on this infraction, you will automatically be pulled out of service.

/s/ W. C. Gray
W. C. Gray
Master Mechanic"

6. Plaintiff, after receiving Master Mechanic Gray's letter on February 5, 1968, at approximately 9:30 a. m., approached General Car Foreman Hubbell

who was in a conversation with Assistant General Car Foreman Brown; Traveling General Car Foreman Miles; and Car Foreman Johnson. Plaintiff accused Hubbell of trying to make a "guinea pig" out of him and further stated that if Hubbell "got him" he would whip him every time he caught him off the job. Plaintiff then threw two punches at Hubbell, one of which missed and the other striking Hubbell on the arm. Assistant General Car Foreman Brown grabbed plaintiff in an effort to calm him. Plaintiff in endeavoring to free himself jostled with Brown. The incident ended at this point.

7. General Car Foreman Hubbell, as soon as the altercation ended, instructed plaintiff to go back to his work station stating that he would deal with him later. However, Assistant General Car Foreman Brown at this time came out of an adjacent office and advised plaintiff that Master Mechanic Gray had ordered him to pick up his things and leave the property. Plaintiff was given a letter of dismissal on the same day, the text of which is as follows:

"This is to advise you that you are being discharged from your position as Carman, effective this date, February 5, 1968, account being charged with attacking General Car Foreman J. C. Hubbell in Frascati Shops at Mobile, Alabama, on February 5th, 1968.

"Investigation will be held in the Master Mechanic's Office at Frascati Shops, Mobile, Alabama, at 10 A.M., Friday, February 9th, 1968, at which time you should be present with a duly accredited representative of your choosing and any witnesses you desire.

"Any passes and company property in your custody must be turned in to this office."

8. The collective bargaining agreement between the Brotherhood and the GM&O contained the following provisions relating to dismissal from service:

"(36) Grievances:

An employee will not be dismissed without just and sufficient cause. If, after investigation, it is found that an employee has been unjustly dismissed, he shall be reinstated with pay for time lost; the investigation to be held within five days after dismissal. If stenographic report is taken of investigation, the committee will be furnished a copy.

"(37) An employee who believes he has been unjustly dealt with shall endeavor to make an adjustment with his immediate foreman. If the grievance is not satisfactorily adjusted or if there arises an alleged violation of these rules, the duly authorized committee, constituted in accordance with the established practice on the respective lines, may during working hours and at a time convenient to the officials in charge, endeavor to adjust with Foreman, General Foreman, Shop Superintendent or Master Mechanic.

"(38) If, after grievance has been handled locally as per Rule 37, the duly authorized committee desires to make an appeal, application shall be made in writing, submitting a statement of the case to the Superintendent of Motive Power and other officials in the order of their rank, when conference will be granted within ten days of day of application."

9. Plaintiff contacted C. C. DeVine, Local Chairman of the Brotherhood, and sought assistance from the Brotherhood to obtain reinstatement to or reemployment in his former job. Local Chairman DeVine advised plaintiff to do nothing for a while, and told him to avoid or postpone the investigation which was scheduled to take place on Friday, February 9, 1968. Plaintiff followed DeVine's advice and obtained a postponement of the investigation by reporting to the GM&O he could not attend the investigation on account of illness.

10. Plaintiff met with Local Chairman DeVine and C. E. Wheeler, General

Chairman of the Brotherhood, on February 21, 1968, with respect to his grievance. Both DeVine and Wheeler advised plaintiff that his conduct was of a most serious nature and that he had little chance of establishing that his discharge was not for good and sufficient cause. His main hope, in their joint views, was to plead for leniency on the grounds of economic hardship to plaintiff and his family and remorse on plaintiff's part for having engaged in such conduct. They advised plaintiff to go back to the railroad property and apologize to Mr. Hubbell, Mr. Brown, and Mr. Gray. Plaintiff did apologize to those individuals and he also spoke to Mr. P. E. DeWitt, the General Master Mechanic and Mr. C. W. Esch, the GM&O's Chief Mechanical Officer. None of plaintiff's efforts succeeded in effecting reinstatement to service, however.

11. Concurrently with plaintiff's efforts on his own behalf, Local Chairman DeVine took up plaintiff's grievance with various railroad officials, commencing with General Car Foreman Hubbell. Hubbell declined to consider plaintiff's reinstatement to service, on the basis of "his previous conduct while in our employ and recent expressions of contempt for the supervision at Frascati Shop. * * *"

12. Plaintiff had been disciplined by the GM&O on two previous occasions. The first occasion involved his leaving the job on January 9, 1964, before the end of his shift without having obtained permission from his foreman. The other occasion involved the use of profane and offensive language against Assistant General Car Foreman Brown on November 9, 1964. Both incidents were entered on his written work record with the GM&O. The first resulted in his being taken out of service for several days without pay. In the second instance, Cottrell denies being taken out of service without pay, but see Exhibit 7-A (letter of Chief Mechanical Officer Esch to General Chairman Wheeler, September 16, 1968), infra.

13. Plaintiff, after being advised that Mr. Hubbell refused to consider reinstating him to service, requested and obtained a formal investigation of the February 5, 1968, incident which had led to his dismissal from service. The investigation was held on May 6, 1968. Plaintiff, at the investigation, admitted the facts of the altercation, described earlier, and asked for leniency and another chance to prove his worth.

14. Local Chairman DeVine by letter dated June 12, 1968, appealed to Master Mechanic Gray to reinstate plaintiff to work "with all rights unimpaired but without pay for time lost." DeVine stated in his letter to Gray that plaintiff admitted his mistake at the formal investigation and promised to "be the best of an employee if returned to work." Master Mechanic Gray, by letter dated July 9, 1968, declined to reinstate plaintiff to service.

15. General Chairman Wheeler took over the processing of plaintiff's grievance after the denial of same by Master Mechanic Gray. Wheeler by letter dated July 31, 1968, appealed Gray's decision to General Master Mechanic DeWitt. General Chairman Wheeler in his letter of July 31, 1968, stated in part:

"At the hearing [investigation] Mr. Cottrell indicated that he realizes the proper way to handle his grievances now and that that was not the proper way. He asked for another chance and promised you have no further trouble with him.

"He has been off now for almost six months. I believe that the time lost will be a lesson to him, and that, as he promised, you will have no further trouble with him. We are, therefore, requesting that you reinstate Mr. Cottrell with all rights unimpaired and without pay for time lost."

General Master Mechanic DeWitt by letter dated August 6, 1968, declined General Chairman Wheeler's appeal, stating in part:

"Account of the seriousness of the instant case and Mr. Cottrell's past

record with this company, I cannot give consideration to reinstating this man."

16. General Chairman Wheeler appealed General Master Mechanic DeWitt's decision to Mr. C. W. Esch, Chief Mechanical Officer. They conferred on the matter during the first part of September, 1968. Mr. Esch, in a letter to Mr. Wheeler dated September 16, 1968, denied the claim stating:

..."When you were in Mobile last week you talked to me about Mr. W. E. Cottrell, who had been dismissed from our service as a carman at Mobile last February 5.

"I am sorry but taking into consideration this man's record since he was employed I could not possibly agree to his reinstatement. As you know, he entered our service on August 15, 1962. He was taken out of service January 9, 1964 on account of leaving his job that afternoon without permission and he was reinstated January 27. He was again suspended on November 9, 1964, this discharge being on account of the use of abusive, profane and disrespectful language to his supervisor; and he was again shown leniency and returned to service November 16, 1964. Final action was that of the unprovoked attack on General Foreman Hubbell February 5, 1968.

"As advised you when we discussed this matter, all of these things have been given thorough consideration and consequently we could not consider returning this man to our service."

17. General Chairman Wheeler appealed the decision of General Master Mechanic Esch to Mr. T. A. Steele, the GM&O's Contract Counselor, and the highest official designated by the GM&O to consider grievance appeals. Messrs. Wheeler and Steele conferred on plaintiff's grievance on December 6, 1968. Mr. Steele, on the same day, by letter to Mr. Wheeler, denied the appeal. He stated in his letter:

"This will confirm our conference today and discussion of your request that Carman W. E. Cottrell 'be restored to service without pay for time lost but with all rights unimpaired.'

"As I told you at the conclusion of our conference, I find the discipline is amply justified and the request that Mr. Cottrell be restored to service is again respectfully declined."

18. The next step which might have been taken by defendant Brotherhood would have been to submit plaintiff's claim before the National Railroad Adjustment Board, Second Division, a tribunal of arbitration established under Section 3 of the Railway Labor Act, 45 U.S.C. § 153. However, the policy of the Brotherhood was to take to the Adjustment Board only claims upon which, in the judgment of the Brotherhood officers, there was a good probability of prevailing. The considered judgment of General Chairman Wheeler and the Brotherhood's Assistant General President A. L. Krause was that there was not sufficient merit in plaintiff's claim to warrant submitting the same to the Adjustment Board. The Brotherhood, accordingly, did not further process plaintiff's claim.

19. Plaintiff was advised by Assistant General President Krause on December 16, 1968, that his claim had been denied by Contract Counselor T. A. Steele on December 6, 1968, and that the Brotherhood did not believe it had sufficient merit to warrant submission of the same to the Adjustment Board.

## CONCLUSIONS OF LAW

1. Plaintiff predicates jurisdiction upon 45 U.S.C. Sec. 151 et seq. (the Railway Labor Act), 28 U.S.C. Sec. 1337 (an Act of Congress regulating commerce); and 29 U.S.C. Sec. 158 (Section 8 of the Labor Management Relations Act).

2. The court lacks subject matter jurisdiction of all claims predicated upon the Labor Management Relations Act (29 U.S.C. Sec. 158 et seq.) since

this case involves the claim of a railroad employee. On May 21, 1970, the court granted the Motion to Strike filed by Defendant GM&O to eliminate from the complaint all jurisdictional allegations based on that Act.

■■ 3. The court also lacks jurisdiction of the subject matter of the claim against Defendant GM&O based upon 45 U.S.C. Sec. 151 et seq. and 28 U.S.C. Sec. 1337 and grants the Motion for Summary Judgment heretofore filed by Defendant GM&O on November 30, 1970 and taken under submission by this court on December 15, 1970. Plaintiff here is seeking to challenge the validity of his discharge from service by the GM&O and seeks reinstatement to his railroad employment with back pay. The jurisdiction to provide this type of equitable relief to railroad employees is vested exclusively in the National Railroad Adjustment Board. Both state and federal courts are without power to adjudicate disputes of this nature. Slocum v. Delaware L & W R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950); Order of Railway Conductors of America v. Southern Ry. Co., 339 U.S. 255, 70 S.Ct. 585, 94 L.Ed. 811 (1950); Transcontinental & Western Air, Inc., v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325 (1953); Walker v. Southern Railway Co., 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966). The railroad may not be sued by one of its employees for the consequences of a dismissal from service unless such employee renounces his right to seek reinstatement to service, a remedy available solely before the Adjustment Board, and, accepting the railroad's action as final, sues for money damages only on a common law or statutory claim for wrongful discharge. Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941); Slocum v. Delaware L & W R. Co., *supra*; Transcontinental & Western Air, Inc. v. Koppal, *supra*; Walker v. Southern Railway Co., *supra*. A possible exception to the above rule would obtain when a discharged employee alleges that his discharge was caused collusively through the hostile joint action of the railroad and the labor union which represented him, Glover v. St. Louis-San Francisco Ry., 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969); Czosek v. O'Mara, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970); but no such allegations were made in the complaint herein nor was any evidence of conduct of such nature adduced at the trial,

■ 4. Assuming, *arguendo*, that the court possessed subject matter jurisdiction over plaintiff's claim against defendant GM&O, such claim would be dismissed for lack of merit. The discharge of plaintiff by defendant GM&O was for *"just and sufficient cause"* within the meaning of Rule 36 of the collective bargaining contract between GM&O and the Brotherhood. Plaintiff's discharge not having been wrongful, there was no duty or obligation on GM&O to reinstate or reemploy the plaintiff on the ground of economic hardship or for any other reason.

■ 5. The claim against defendant Brotherhood is justiciable pursuant to 45 U.S.C. § 151, et seq., and 28 U.S.C. § 1337 to the extent that it does or may allege a breach of the duty of fair representation. Steele v. L&N R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); cf. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

6. Defendant Brotherhood handled plaintiff's grievance in conformity with the grievance provisions of the collective bargaining agreement, processing his claim through every step provided thereunder. There was no evidence adduced showing or tending to show that there was any animus, malice, or ill-will between plaintiff and Local Chairman DeVine, General Chairman Wheeler or any other agent or representative of the Brotherhood, the record, to the contrary, establishing, rather, that the agents and representatives of the Brotherhood handled the claim in good faith and with due diligence. The theory relied upon

by the representatives of the Brotherhood in seeking to attain plaintiff's reinstatement to employment, i.e.,: a plea for leniency, was reasonable in light of the facts involved, and the lack of success in the handling of the grievance plainly was not due to arbitrary or discriminatory action on the part of his Union grievance representatives. The final result must be viewed as attributable to the seriousness of plaintiff's misconduct, which warranted the imposition of the penalty of dismissal from employment.

7. Brotherhood's decision not to submit plaintiff's claim to the National Railroad Adjustment Board, Second Division, for arbitration was based upon an exercise of judgment that that particular claim lacked sufficient merit to justify submission to arbitration and was in line with established organizational policy to take into arbitration before the Adjustment Board only those cases in which there was a good probability that the claim would be sustained. Refusal to submit plaintiff's claim to the Adjustment Board, in those circumstances, did not constitute a breach by the Brotherhood of its duty of fair repre-

sentation. Plaintiff, moreover, was fully and timely advised of Brotherhood's decision not to submit his claim to the Adjustment Board, so that he, on his own behalf, could have submitted his claim to the Adjustment Board, if he had so desired. Conley v. Gibson, *supra*; Starke v. New York, Chicago & St. Louis R. Co., 180 F.2d 569 (7th Cir. 1950); Spires v. Southern Ry. Co., 204 F.2d 453 (4th Cir. 1953).

8. The claim against defendant Brotherhood to the effect that Brotherhood failed to accord or provide plaintiff with fair representation in respect to his discharge grievance is without merit.

### JUDGMENT

The Court upon trial of this cause having made its findings of fact and conclusions of law and having rendered its decision that for the reasons stated plaintiff's claims are all lacking in merit, it is

Ordered,

1. That plaintiff take nothing by its suit, and that this action be dismissed, with prejudice, and at the cost of the plaintiff.