25 Wis.2d 205 (1964)
McDONALD, Appellant,
v.
CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY and another, Respondents.
Supreme Court of Wisconsin.
September 28, 1964.
October 27, 1964.
*208 For the appellant there were briefs and oral argument by A. M. Frederickson of Milwaukee.
For the respondent Chicago, Milwaukee, St. Paul & Pacific Railroad Company there was a brief by Bender, Trump, Davidson & Godfrey and Rodger S. Trump, all of Milwaukee, and oral argument by Rodger S. Trump.
For the respondent Brotherhood of Maintenance of Way Employees there was a brief by Shea & Hoyt of Milwaukee, and Mulholland, Hickey & Lyman of Toledo, Ohio, attorneys, and Ralph M. Hoyt of Milwaukee, and Richard R. Lyman and Donald W. Fisher, both of Toledo, of counsel, and oral argument by Mr. Ralph M. Hoyt and Mr. Fisher.
FAIRCHILD, J.
1. Jurisdiction. The circuit court was of the opinion that because this action would involve interpretation of a collective-bargaining agreement between a railroad and a union the Congress. by the Railway Labor Act, had *209 vested exclusive jurisdiction in the national railroad adjustment board.
The Railway Labor Act[1] classified railroad labor disputes into two large categories, labeled by the supreme court as "major" and "minor" and established separate procedures for handling each.[2] Major disputes involve agreements not yet reached; i.e., negotiations for future contracts. They present the large issues over which strikes ordinarily arise. Such disputes are submitted to mediation under the auspices of the national mediation board, arbitration upon consent of both parties, and possible ultimate presidential intervention. As the disputes involve agreements not yet reached, the act does not compel agreement, but only requires that its voluntary procedures be exhausted before the parties resort to economic self-help.
Minor disputes involve agreements already entered into and rights already accrued. They consist of disputes and differences as to interpretation of agreements in effect, and the effect of those agreements upon situations and problems which arise incidentally in the course of employment. With respect to "minor" disputes "the Act does not leave the parties wholly free, at their own will, to agree or not to agree."[3] The act established the national railroad adjustment board. Sub. (i) of the act provides:[4]
"The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating *210 officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."
The board has "jurisdiction" to determine grievances and make awards; either party may submit a dispute to the board whether or not the other is willing. The board's decisions are final and binding.[5] Unions may be enjoined from calling strikes over such controversies.[6] This procedure for the handling of minor disputes has been referred to by the federal courts as compulsory arbitration in a limited area.[7]
A claim of wrongful discharge of an employee is a "minor" dispute and falls within the board's jurisdiction. The federal courts have held as a general rule that in cases where the board has primary jurisdiction, such jurisdiction is exclusive.[8] However, in Moore v. Illinois Central R. Co.[9] the supreme court held that there was nothing in the Railway Labor Act to prevent a state court, and on removal a federal court, from entertaining an action for wrongful discharge.
*211 In Slocum v. Delaware, L. & W. R. Co.[10] relied upon by respondents and the trial court, the court held that a state court could not entertain an action for a declaratory judgment with respect to a jurisdictional dispute between two unions. The court stated that the dispute concerned interpretation of an existing bargaining agreement, and that settlement of the dispute "would have prospective as well as retrospective importance to both the railroad and its employees, since the interpretation accepted would govern future relations of those parties."[11] The action was thus within the exclusive jurisdiction of the national railroad adjustment board. However, the court went on to say:[12]
"Our holding here is not inconsistent with our holding in Moore v. Illinois Central R. Co., 312 U. S. 630. Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, and does not involve questions of future relations between the railroad and its other employees. If a court in handling such a case must consider some provision of a collective-bargaining agreement, its interpretation would of course have no binding effect on future interpretations by the Board."
In a case decided the same day, the court held that a railroad could not seek an interpretation of a collective-bargaining contract by declaratory-judgment action in a state court *212 in a dispute arising from claims by continuing employees to extra pay for certain work.[13]
In Transcontinental Air v. Koppal[14] the supreme court stated:[15]
"This case presents two questions: (1) whether a discharged employee of a carrier that is subject to the Railway Labor Act is precluded by that Act from resorting to a staterecognized cause of action for wrongful discharge and, if not, (2) whether, in such action, he must show that he has exhausted his administrative remedies, under his contract of employment. For the reasons hereafter stated, our answer to the first question is no and to the second, yes, provided the applicable state law so requires."
The court went on to state:[16]
"The important point is that while the employment contract conforms to the policy of the Railway Labor Act and the Act provides a procedure for handling grievances so as to avoid litigation and interruptions of service, the Act does not deprive an employee of his right to sue his employer for an unlawful discharge if the employee chooses to do so."
And after quoting portions of the Moore and Slocum decisions to the effect that a discharged employee may bring a common-law action for damages in a court, the opinion went on:[17]
"The result is that, whereas, under the Railway Labor Act, the Adjustment Board has exclusive jurisdiction to adjust grievances and jurisdictional disputes of the type involved in the Slocum case, that Board does not have like exclusive jurisdiction over the claim of an employee that he has been unlawfully discharged. Such employee may proceed *213 either in accordance with the administrative procedures prescribed in his employment contract or he may resort to his action at law for alleged unlawful discharge if the state courts recognize such a claim. Where the applicable law permits his recovery of damages without showing his prior exhaustion of his administrative remedies, he may so recover, as he did in the Moore litigation, supra, under Mississippi law."
In cases determined after the Koppal decision the supreme court has more narrowly limited the doctrine of Moore. In Pennsylvania R. Co. v. Day,[18] the court held that claims of a retired employee to extra pay for work done before retirement constituted a dispute within the exclusive jurisdiction of the board. With respect to the Moore decision, the court stated:[19]
"Our decision in Moore v. Illinois Central R. Co.,... does not stand in the way of this. The decision in that case has been given its proper, limited scope in Slocum v. Delaware, L. & W. R. Co.,... Moore carved out from the controlling doctrine of primary jurisdiction the unusual and special situation of wrongful discharge where the aggrieved employee had been expelled from the employment relationship. Moreover, since the discharge had been accepted as final by the employee, it is probable that the damages accrued primarily after the employment relationship had terminated."
And in Union Pacific R. Co. v. Price[20] the court held that once a discharged employee had voluntarily submitted his claim to the board and suffered an adverse ruling he was precluded from maintaining an action in court. The court stated in a footnote:[21]
"Despite the clear import of the statutory language and the legislative history the respondent argues that this Court's *214 holding in Moore v. Illinois R. Co., ... requires us to hold that the instant suit is not precluded. However, the holding in Moore was simply that a common-law remedy for damages might be pursued by a discharged employee who did not resort to the statutory remedy before the Board to challenge the validity of his dismissal. A different question arises here where the employee obtained a determination from the Board, and, having lost, is seeking to relitigate in the courts the same issue as to the validity of his discharge."
On the basis of the decisions just referred to the federal courts of appeal have dismissed actions where the object of the discharged employee was reinstatement in his former position.[22] And actions have been dismissed where the employee refuses to accept the discharge as final[23] or where it is proved that he was not in fact discharged.[24] But the courts have uniformly held that the Railway Labor Act does not deprive a discharged employee of the right to maintain *215 an action for damages.[25] And numerous decisions have stated that a discharged railroad employee has an option to challenge the validity of his discharge before the board and seek reinstatement and back pay, or, after accepting the dismissal as final, bring a civil suit against the railroad for damages for unlawful discharge.[26] As was stated by the court of appeals for the Fourth circuit in a case decided March 2, 1964:[27]
"Relying upon the established doctrine that a discharged railroad employee may at his option challenge the validity of his discharge before the Railroad Adjustment Board and seek reinstatement and back pay or, after accepting the dismissal as final, bring a civil suit against the railroad for unlawful discharge, Rumbaugh further asserted in his complaint that he was electing to pursue the latter course. He also joined the union as a defendant because it wrongfully procured his discharge by the railroad.
"While it is indisputable that a claim for wrongful discharge is judicially cognizable, an action of this type is essentially one at common law for breach of contract and does *216 not arise under the Railway Labor Act. Consequently, original federal jurisdiction can attach only when there is diversity of citizenship."
In addition the issue has come before a number of state courts which have reached the same conclusion.[28]
In the complaint against the railroad now before us plaintiff alleged that he "accepts the railroad's faction in discharging him as final" and seeks damages for the wrongful discharge. He thereby brought himself within the rule of the Moore and Koppal Cases. Accordingly the circuit court had jurisdiction to entertain the action. The circuit court erred when it sustained the demurrer on jurisdictional grounds.
2. Sufficiency of the alleged cause of action against the railroad. The circuit court did not rule upon the general demurrers, because of its conclusion that it had no jurisdiction.
Liberally construed, the complaint against the railroad sufficiently alleges the existence of a contract granting plaintiff certain tenure in his employment, and a discharge on grounds which had no foundation in fact. The complaint does not tell us what grievance procedure or other remedy was available under the contract, nor that plaintiff exhausted such remedy.
We have held that where an employee brings an action for reinstatement in employment, claiming that a discharge violated the terms of a collective-bargaining agreement, he must prove (and presumably plead) that he has exhausted *217 the remedies provided by the agreement or that there were circumstances excusing resort to such remedies.[29] We did not decide whether the same rule would apply to an action by an employee who accepts the discharge as final and sues the employer for damages, as in the instant case.
In Kopke v. Ranney[30] where a union member sued the union for damages for wrongful expulsion we held, for stated reasons of policy, that an expelled member must have exhausted the remedies available within the union before he can maintain an action for damages, unless there were circumstances which excused his resort to those remedies. One of the considerations mentioned was that there would be sounder justification for imposing liability for wrongful expulsion on the union treasury if an appellate body within the union had first been given an opportunity to limit damages by granting reinstatement.[31]
The employment relationship is different from the membership relationship, of course, and we do not conclude, as a matter of law, that an employer who discharges an employee in violation of contract must always be given an opportunity to limit damages by reinstating the employee pursuant to whatever grievance procedure may be provided in the contract.
In Kopke we also held that the expelled union member must plead the exhaustion of his remedies within the union or facts which excuse his resort to them. In the present case, however, we conclude that if it is to be claimed that some provision of the collective-bargaining contract cuts off a wrongfully discharged employee's right of action for damages *218 for breach of contract, that is a matter of affirmative defense, and the facts must be pleaded by defendant.
Accordingly we hold that the general demurrer to the complaint against the railroad must be overruled.
3. Sufficiency of the alleged cause of action against the union. Plaintiff appears to claim that the union failed negligently or wilfully to represent plaintiff in connection with his discharge. We think it clear that under our decision in Fray v. Amalgamated, etc., Local Union No. 248,[32] no cause of action has been stated. The complaint does not allege facts sufficient to show that plaintiff exhausted his remedies within the union before bringing action. Neither does it allege the pertinent terms of the union constitution or other membership contract, nor of the collective-bargaining agreement. Absent those allegations, the complaint states only conclusions of law with respect to the union's duty to protect plaintiff's rights and its failure to do so.
The general demurrer to the complaint against the union must be sustained. Presumably the circuit court denied leave to plead over because of the ruling that the court had no jurisdiction in any event. We think that plaintiff should be given an opportunity to plead over and remedy the deficiencies in his complaint if the facts permit him to do so.
4. Costs on appeal. Although the issues presented are issues of law, arising upon demurrers to complaints, plaintiff failed to include in his appendix either the complaints or the decision of the learned circuit judge. Because of these and other inadequacies in his presentation, we deny costs on appeal.
By the Court.Judgment reversed, cause remanded for further proceedings not inconsistent with the opinion on file. No costs allowed to any party.
NOTES
[1] 45 U. S. Code, p. 462, sec. 151 et seq.
[2] Elgin, J. & E. R. Co. v. Burley (1945), 325 U. S. 711, 65 Sup. Ct. 1282, 89 L. Ed. 1886.
[3] Id., at page 725.
[4] 45 U. S. p. 529, sec. 153.
[5] 45 U. S. Code, p. 530, sec. 153, First (m). See Union Pacific R. Co. v. Price (1959), 360 U. S. 601, 79 Sup. Ct. 1351, 3 L. Ed. (2d) 1460.
[6] Trainmen v. Chicago R. & I. R. Co. (1957), 353 U. S. 30, 77 Sup. Ct. 635, 1 L. Ed. (2d) 622; Brotherhood of Locomotive Engrs. v. Louisville & N. R. Co. (1963), 373 U. S. 33, 83 Sup. Ct. 1059, 10 L. Ed. (2d) 172.
[7] Trainmen v. Chicago R. & I. R. Co., supra, footnote 6; Cook v. Missouri Pacific R. Co. (5th Cir. 1959), 263 Fed. (2d) 954; California v. Taylor (1957), 353 U. S. 553, 558, 559, 77 Sup. Ct. 1037, 1 L. Ed. (2d) 1034; Louisville & N. R. Co. v. Brown (5th Cir. 1958), 252 Fed. (2d) 149; Russ v. Southern R. Co. (6th Cir. 1964), 334 Fed. (2d) 224, 229.
[8] Pennsylvania R. Co. v. Day (1959), 360 U. S. 548, 79 Sup. Ct. 1322, 3 L. Ed. (2d) 1422.
[9] (1941), 312 U. S. 630, 61 Sup. Ct. 754, 85 L. Ed. 1089.
[10] (1950), 339 U. S. 239, 70 Sup. Ct. 577, 94 L. Ed. 795.
[11] Id., at page 242.
[12] Id., at page 244.
[13] Order of Conductors v. Southern R. Co. (1950), 339 U. S. 255, 70 Sup. Ct. 585, 94 L. Ed. 811.
[14] (1953), 345 U. S. 653, 73 Sup. Ct. 906, 97 L. Ed. 1325.
[15] Id., at page 654.
[16] Id., at page 660.
[17] Id., at page 661.
[18] Supra, footnote 8.
[19] Id., at pages 553, 554.
[20] (1959), 360 U. S. 601, 79 Sup. Ct. 1351, 3 L. Ed. (2d) 1460.
[21] Id., at page 609, footnote 8.
[22] Haley v. Childers (8th Cir. 1963), 314 Fed. (2d) 610; Hodges v. Atlantic Coast Line R. Co. (5th Cir. 1962), 310 Fed. (2d) 438; Hanson v. Chicago, B. & Q. R. Co. (7th Cir. 1960), 282 Fed. (2d) 758; Alabaugh v. Baltimore & Ohio R. Co. (4th Cir. 1955), 222 Fed. (2d) 861; Walters v. Chicago & N. W. R. Co. (7th Cir. 1954), 216 Fed. (2d) 332; Butler v. Thompson (8th Cir. 1951), 192 Fed. (2d) 831; Broady v. Illinois Central R. Co. (7th Cir. 1951), 191 Fed. (2d) 73.
[23] In Ferro v. Railway Express Agency, Inc. (2d Cir. 1961), 296 Fed. (2d) 847, 852, the court stated: "The fatal defect in appellants' position is their unwillingness to allege that their employee status has been terminated and thus to allege a cause of action for wrongful discharge which would be properly before the district court. The district court offered an opportunity to appellants to come within its jurisdiction by alleging wrongful discharge but they did not choose to avail themselves of this offer. Under these circumstances the district court properly dismissed this part of the complaint." And see, Anno. 61 A. L. R. (2d) 917, 929, sec. 9.
[24] Hundley v. Illinois Central R. Co. (6th Cir. 1959), 272 Fed. (2d) 752; Spires v. Southern R. Co. (4th Cir. 1953), 204 Fed. (2d) 453; Priest v. Chicago, R. I. & P. R. R. (8th Cir. 1951), 189 Fed. (2d) 813.
[25] Rumbaugh v. Winifrede R. Co. (4th Cir. 1964), 331 Fed. (2d) 530, 538, 539; Cook v. Missouri Pacific R. Co., supra, footnote 7; Cranston v. Baltimore & Ohio R. Co. (3d Cir. 1958), 258 Fed. (2d) 630; Oswald v. Chicago, B. & Q. Co. (8th Cir. 1952), 200 Fed. (2d) 549; Newman v. Baltimore & Ohio R. Co. (3d Cir. 1951), 191 Fed. (2d) 560; Priest v. Chicago, R. I. & P. R. R., supra, footnote 24.
[26] Rumbaugh v. Winifrede R. Co., supra, footnote 25; Haley v. Childers, supra, footnote 22; Ferro v. Railway Express Agency, Inc., supra, footnote 23; Cook v. Missouri Pacific R. Co., supra, footnote 7; Woolley v. Eastern Air Lines (5th Cir. 1957), 250 Fed. (2d) 86; Barnett v. Pennsylvania-Reading Seashore Lines (3d Cir. 1957), 245 Fed. (2d) 579; Thompson v. Moore (5th Cir. 1955), 223 Fed. (2d) 91; Walters v. Chicago & N. W. R. Co., supra, footnote 22; Newman v. Baltimore & Ohio R. Co., supra, footnote 25; Broady v. Illinois Central R. Co., supra, footnote 22.
[27] Rumbaugh v. Winifrede R. Co., supra, footnote 25, at pages 538, 539. And see Rocha v. Missouri Pacific R. Co. (D. C. Tex. 1963), 224 Fed. Supp. 566.
[28] Wise v. Southern Pacific Co. (1963), 223 Cal. App. (2d) 50, 35 Cal. Rptr. 652; Martin v. Southern R. Co. (S. C. 1964), 136 S. E. (2d) 907; Donahoo v. Thompson (Mo. 1956), 291 S. W. (2d) 70, 61 A. L. R. (2d) 911; Jorgensen v. Pennsylvania R. Co. (1955), 38 N. J. Super. 317, 118 Atl. (2d) 854; Payne v. Pullman Co. (1957), 13 Ill. App. (2d) 105, 141 N. E. (2d) 83; Atkinson v. Thompson (Tex. Civ. App. 1958), 311 S. W. (2d) 250; Crockett v. Union Terminal Co. (Tex. Civ. App. 1960), 342 S. W. (2d) 129.
[29] Widuk v. John Oster Mfg. Co. (1962), 17 Wis. (2d) 367, 374, 117 N. W. (2d) 245.
[30] (1962), 16 Wis. (2d) 369, 114 N. W. (2d) 485.
[31] See also Fray v. Amalgamated, etc., Local Union No. 248 (1960), 9 Wis. (2d) 631, 101 N. W. (2d) 782, an action by a union member against a union for negligent failure to process a grievance.
[32] Supra, footnote 31.